## Richmond.

HOLSTON SALT & PLASTER CO. v. CAMPBELL, TRUSTEE, ET AL.

### November 17th, 1892.

1. DEEDS—*Construction of*—*Contiguous* —Where in a deed the land con-
   veyed is described as a certain "estate and the lands contiguous
   thereto," a tract of land separated therefrom by intervening lands of
   other persons, and distant three-quarters of a mile—
HELD :
    Not embraced within the conveyance.
2. IDEM.—Words having a primary meaning must be understood in that
   sense, unless the context shows that it was otherwise intended.
   Two tracts of land described as being "contiguous" must touch
   each other on one side.
3. IDEM—*Parol evidence*.—Where the meaning of the words of a written
   contract are clear, parol evidence is not admissible to show that the
   parties intended something else.
4. EVIDENCE—*Land-books*.—Neither the land-books themselves, nor parol
   evidence of their contents, are admissible to show a meaning of the
   parties other than that plainly expressed in their written contract.

Argued at Wytheville.   Decided at Richmond.   Error to
judgment of circuit court of Smyth county, at March term,
1891, in an action of ejectment wherein James C. Campbell,
trustee for Thomas L. Preston, *et al.*, were plaintiffs, and the
Holston Salt and Plaster Company was defendant.   The
judgment being adverse to defendant, it obtained a writ of
error to this court.   Opinion states the case.

*C. B. Thomas* and *B. F. Buchanan*, for plaintiff in error.

*J. A. Buchanan*, for defendants in error.

LEWIS, P., delivered the opinion of the court.

This was an action of ejectment to recover a tract of two hundred and twenty acres of land situate in Smyth county. The land in controversy, together with the Preston Salt Works and various other tracts of land, situate in Smyth and other counties, and indeed his whole estate, real and personal, was conveyed, on the 7th of July, 1859, by Thomas L. Preston to Robert Gibboney, in trust for the payment of debts. In the deed of trust the salt works property is described as " that tract or parcel of land, lying in Smyth county, on the waters of the north fork of the Holston, and commonly known as the Preston Salt Works estate."

On the 10th of June, 1862, the trustee, Gibboney, sold the salt works to Stuart & Palmer, the grantors of the defendant company, the plaintiff in error here, describing in the written contract of sale the property sold as " being all the estate, right, title, and interest which Thomas L. Preston conveyed to the said Gibboney by deed bearing date July 7th, 1859, in the Preston Salt Works estate, and the lands contiguous thereto "; and the subsequent conveyance by the substituted trustee follows this description.

It seems that the salt works proper originally contained only about three hundred acres, but was from time to time added to by the acquisition of other lands, the whole forming a compact body, if the land in controversy be.excluded. The latter was devised by Mrs. Sarah B. Preston to her three sons, of whom the said Thomas L. was one, a number of years before his deed to Gibboney, and is distant from the main body of the salt works land about three-fourths of a mile, being separated therefrom by the intervening lands of other persons.

The question, therefore, is whether the sale by Gibboney embraced the land in controversy; and that depends upon

whether, according to the true construction of the contract of sale, the land is *contiguous* to the salt works estate.

It is a general rule that the construction of all written instruments is a question of law for the court, and that the terms of every such instrument are to be understood in their plain, ordinary, and popular sense.    2 Pars., Cont. 492; *Goddard* v. *Foster*, 17 Wall. 123 ; *Smith* v. *Faulkner*, 12 Gray 251; *Nash* v. *Drisco*, 51 Me. 417; 1 Wait, Ac. and Def. 121. What, then, is the meaning of " contiguous " ?    Its primary meaning, according to all the lexicographers, is " in actual contact " or " touching," from the two Latin words *con* and *tangere*.    It is not synonymous with " adjacent," although sometimes used in that sense, and *vice versa*.    " What is adjacent," says Worcester, " may be separated by the intervention of some other object ; what is contiguous must touch on one side."

The word, then, having a primary meaning, must always be understood in that sense, unless the context shows it was otherwise intended ; the rule being, as observed by the master of the rolls in *Pigg* v. *Clarke*, 3 Ch. Div. 672, that where a word is used that has a primary meaning (as all words have which have more than one meaning), you want a context to find another.    The same point was decided in *Findley* v. *Findley*, 11 Gratt. 434, in which case one of the rules laid down by Sir James Wigram for the construction of wills was quoted with approval, and held to be equally applicable to written contracts ; which rule is in these words:

" When there is nothing in the context of a will from which it is apparent that a testator has used the words in which he has expressed himself in any other than their strict and primary sense, and when his words, so interpreted, are sensible with reference to extrinsic circumstances, it is an inflexible rule of construction that the words of the will shall be interpreted in their strict and primary sense, and in no other,

although they may be capable of some popular or secondary interpretation, and although the most conclusive evidence of intention to use them in such popular or secondary sense be tendered."

If the words used in a written contract do not express the true meaning of the parties—*i. e.*, where there is a mutual mistake—the error may be corrected by a court of equity, upon a bill filed for that purpose. But a court of law, in construing a contract which the parties have made, cannot substitute in its place another which they may have intended to make, but which they did not make. The rule is, therefore, said to be inflexible, because by the consistency and uniformity of construction which it requires justice is done not only to the parties in the particular case before the court, but it enables all persons to do justice to themselves, by making known to them, before entering into a contract, the force and effect of the words they employ, and the precautions necessary to effectuate their intention.

Applying this rule to the present case, it is clear that the land in controversy was not embraced in the instrument in question. There is nothing, in other words, in the context to show that when " contiguous " lands were spoken of the word was not used in its primary sense. In the deed of trust the salt works estate is described as a single " tract or parcel " of land, while in the contract of sale the property sold is described as the Preston Salt Works and the lands contiguous thereto. But the land in controversy is not contiguous thereto, because it is separated therefrom by the lands of others; and we must take the contract as it is. We cannot, by judicial construction, in violation of the settled rules on the subject, make a contract for the parties which they have not made for themselves; and, as the contract they did make is, by itself, intelligible and certain, when its words are taken in their common or natural sense, the meaning of those words must be taken as the meaning of the parties.

Opinion.

Parol evidence, therefore, to show that prior to the sale to Stuart & Palmer the land in controversy was used in connection with, and virtually as a part of, the salt works estate, was inadmissible. Nor was there error in excluding at the trial the letter from Preston to Gibboney, written in September, 1866. The writer simply said, in substance, that the title to the land now in controversy depended upon whether it was Gibboney's intention to include it in the sale to Stuart & Palmer, and asked him to decide the matter at once. Whether Gibboney answered the letter, or took any action in the matter, does not appear, nor is it material, since it is settled law that where the meaning of a contract is clear, an erroneous construction put upon it by the parties cannot control its effect. *Railroad Company* v. *Trimble,* 10 Wall. 367 ; *Knick* v. *Knick,* 75 Va. 12.

Nor was there error in excluding the evidence of Sexton, deputy clerk of the county court of Smyth county, who was offered by the defendant to prove certain entries in the landbooks of that county touching the land in controversy. If those entries were, in any view, admissible evidence in the case, the books themselves were the best evidence of their contents, and they were not produced. But the books were not admissible, for reasons already stated. There is no question of estoppel in the case.

The remaining assignments of error relied on in the argument at the bar, which chiefly relate to the action of the trial court in regard to the instructions offered by the defendant, need not be specially noticed, as what has been said sufficiently disposes of the case.

Judgment affirmed.