[L. A. No. 1338. Department Two.—September 2, 1905.]

## FRANK W. JOHNSON et al., Appellants, v. SOUTHERN PACIFIC RAILROAD COMPANY, Respondent.

ACTION FOR DEATH—NEGLIGENCE OF RAILROAD COMPANY—ABSENCE OF SIGNAL AT STREET-CROSSING — RUNAWAY — SUFFICIENCY OF COMPLAINT.—A complaint by heirs in an action for death, alleging that the defendant railroad company negligently ran a train of cars at a high rate of speed on an overhead bridge at a street-crossing, without warning or signal of approach as required by section 486 of the Civil Code; that the crossing was dangerous by reason of the obstruction thereof from view in approaching it; and that as the result of such negligence the horse driven by deceased on the road beneath the bridge so crossed by the train br me frightened and ran away, thereby causing the death, state a cause of action; and a demurrer thereto was improperly sustained.

ID.—CONSTRUCTION OF CODE—SIGNAL AT "CROSSINGS."—The language of section 486 of the Civil Code requiring signals at street-crossings is unambiguous, and requires such signals at all street-crossings, however constructed, whether at grade, or above or below it. The fact that it crossed upon a bridge did not make it any less a crossing within the terms of the statute. The object of the legislature is not merely to prevent collisions, but also to warn travelers of the approach of the train, with the view to avoiding dangers to

them from the sudden unannounced approach of the train and the consequent frightening of horses.

APPEAL from a judgment of the Superior Court of Santa Barbara County. William S. Day, Judge.

The facts are stated in the opinion of the court.

Richards & Carrier, for Appellants.

The railroad was guilty of negligence upon the admitted facts. (Civ. Code, sec. 486; *People* v. *New York Cent. etc. R. R. Co.,* 13 N. Y. 78; *Pennsylvania R. R. Co.* v. *Barnett,* 59 Pa. St. 259, 98 Am. Dec. 346; *Vandewater* v. *New York etc. R. R. Co.,* 135 N. Y. 583, 32 N. E. 636.)

Canfield & Starbuck, for Respondent.

The railroad company is not required to give signals at overhead crossings. (*Favor* v. *Boston etc. R. R. Co.,* 114 Mass. 351, 19 Am. Rep. 364; *Jenson* v. *Chicago etc. Ry Co.,* 86 Wis. 589, 57 N. W. 359; *Barron* v. *Chicago etc. Ry. Co.,* 89 Wis. 79, 83, 61 N. W. 303, 304; *Phillips* v. *New York etc. R. R. Co.,* 84 Hun, 412, 416, 32 N. Y. Supp. 299; *Missouri etc. Ry. Co.* v. *Thomas,* 87 Tex. 282, 286, 28 S. W. 343, 344; *McElroy* v. *Georgia etc. Ry. Co.,* 98 Ga. 257, 258, 25 S. E. 439.) The frightening of horses by the incidental operation of the road is not actionable. (*East Tenn. etc. R. R. Co.* v. *Feathers,* 10 Lea, 103; *Wilson* v. *Rochester etc. R. R. Co.,* 16 Barb. 167, 168; *Reynolds* v. *Great Northern Ry. Co.,* 69 Fed. 808, 809, 813, 29 L. R. A. 695, 696, 699; *Melton* v. *St. Louis etc. Ry. Co.,* 99 Mo. App. 282, 288, 73 S. W. 231, 233; *Williams* v. *Chicago and Alton Ry. Co.,* 135 Ill. 491, 25 Am. St. Rep. 397, 26 N. E. 661; *Hahn* v. *Southern Pac. R. R. Co.,* 51 Cal. 605, 607; *Abbot* v. *Kalbus,* 74 Wis. 504, 43 N. W. 367; *Lamb* v. *Old Colony R. R. Co.,* 140 Mass. 79, 80, 54 Am. Rep. 449, 450, 2 N. E. 932; *Bailey* v. *Hartford etc. Ry. Co.,* 56 Conn. 444, 16 Atl. 234; *Ransom* v. *Chicago etc. Ry. Co.,* 62 Wis. 178, 180, 51 Am. Rep. 718, 22 N. W. 147; *St. Louis etc. Ry. Co.* v. *Payne,* 29 Kan. 166, 168, 169; *Flint* v. *Norwich etc. R. R. Co.,* 110 Mass. 222; *Reynolds* v. *Great Northern Ry. Co.,* 69 Fed. 808, 809, 29 L. R. A. 695, 699; *Melton* v. *St. Louis etc. Ry. Co.,* 99 Mo. App. 282, 287, 288, 73 S. W. 231, 233.) The foregoing rule applies to bridge crossings. (*Cincinnati etc. Ry.*

*Co.* v. *Gaines,* 104 Ind. 526, 531, 533, 54 Am. Rep. 334, 336, 337, 4 N. E. 34, 5 N. E. 746.)

LORIGAN, J.—This action is brought to recover damages for the death of Katherine S. Johnson, wife of the plaintiff Frank W. Johnson, and mother of the other plaintiffs, who are minors, alleged to have been occasioned through the negligence of defendant.

The second amended complaint, after stating the corporate existence of defendant, and the maintenance and operation by it of a railroad on July 25, 1901, alleges, as the facts upon which the cause of action for negligence is predicated, that said railroad "about five miles west of the city of Santa Barbara crosses obliquely the county road known as Hollister Avenue about ninety yards east of the place where the road known as the Modoc Road enters said Hollister Avenue, the acute angle formed thereby being of about 30 degrees; the said crossing is an overhead one, the track being upon a bridge over said road and the public road excavated so as to pass under the bridge, and being flanked by the sides of the cut on each side; that said bridge is supported by three abutments, one on each side of the county road and one in the middle; that the space between said abutments is about 20 feet and said abutments are about 80 feet in length; that by reason of trees and other obstacles, the view up and down the track is very much obstructed so that persons driving along Hollister Avenue cannot see approaching trains; that by reason of the said construction of said crossing, the same is a dangerous one to persons driving to and fro along Hollister Avenue. That on the 25th day of July, 1901, Katherine S. Johnson . . . was driving from plaintiff's home near Goleta along Hollister Avenue towards the city of Santa Barbara, and as she approached said crossing, defendant caused one of its locomotives with a train of cars attached thereto to approach said crossing at a high rate of speed, and in so doing disregarded its duty to give signal of such approach, but, on the contrary, caused said train to approach negligently and carelessly and without signaling, either by blowing a whistle or ringing a bell, or giving any other signal whatsoever, and without giving any signal by flag or otherwise; that the said Katherine S. Johnson, hearing no signal, was

unaware of the approach of said train, and just as her horse and wagon were under said bridge said train passed over the same, negligently and carelessly, as aforesaid. That in consequence of the dangerous character of said crossing as maintained by defendant and of the failure on its part by reason of its negligence and carelessness to give the proper signal as its train approached said crossing, the horse of said Katherine S. Johnson was frightened and ran away and she was thrown violently out of the wagon and killed.''

A demurrer to the complaint on the ground that these alleged facts did not constitute a cause of action was sustained, and plaintiffs declining to further amend judgment was rendered against them. This appeal is taken from said judgment to test the validity of the order sustaining said demurrer.

It is contended by appellants that the judgment should be reversed on two grounds: 1. Because they insist that the complaint shows that the crossing was a peculiarly dangerous one, and therefore it became the duty of defendant to take commensurate precautions, and the extent of these precautions was a matter to be left to the jury; and 2. That it was the duty, under the statute, of the defendant's train to have signaled, either by bell or whistle, before reaching the crossing, and that having failed to do so defendant is liable for the damage that ensued.

We do not deem it necessary to discuss the first proposition advanced by appellant, that the allegations of the complaint were sufficient to constitute negligence on the part of the defendant at common law in failing to give warning of the approach of its train to the highway crossing referred to in the complaint, because we are satisfied that the complaint in alleging that the defendant failed and neglected to give such warning of the approach of its train, as provided by section 486 of the Civil Code, sufficiently stated a cause of action.

The lower court in sustaining the demurrer necessarily took the view, which is also insisted on here by respondent, that the section above referred to has application only where a railroad crosses a highway at grade—upon the same level as the highway. We cannot agree with this construction of the statute, and find no warrant in its language for this limitation placed upon its meaning.

The section provides that a bell must be rung or whistle sounded at least eighty rods from the place where the "railroad crosses any street, road, or highway." There is certainly nothing in this language which limits the giving of signals of approach to any particular crossings. The language of the section is plain and unambiguous and applies in general terms to all crossings. By it the duty is enjoined upon the railroad to signal at a prescribed distance from "where the railroad crosses any street, road, or highway." This is broad enough to apply to any crossing of a highway by a railroad, whether it is super, sub, or level grade. Nothing is said in the section about signaling only when the railroad crosses a highway at level grade. Nor is there anything in the section which would warrant so construing it. In fact, the language is so plain as not to be subject to construction at all. If the legislature had intended that the railroad should only be required to give signals when crossing highways at grade, it would, as has been done in other states, have readily and clearly expressed that intention. It could not, however, have used more general language than is employed in the section under consideration, to express the intention that the required signal should be given at all crossings of highways whether above, below, or at grade. To construe this language as applying only to grade-crossings, when nothing is said about grades, would be to judicially legislate into the section an exemption which its plain and comprehensive language clearly excludes. Nothing is said in the section about crossing at grade, but it is simply provided that signals shall be given whenever the railroad crosses any street, road, or highway. In the case at bar it is alleged that the railroad crosses Hollister Avenue, a public highway, upon a bridge. The fact that it crossed it upon a bridge did not make it any the less a crossing within the terms of the statute. It was a crossing at super-grade, but still a crossing. (*People* v. *New York Cent. R. R. Co.*, 13 N. Y. 78; s. c., 25 Barb. 199.)

It is, however, insisted by respondent that while the language of the section may be broad enough to include all crossings, yet that when the object sought to be accomplished by requiring such warnings at crossings is taken into consideration, it is evident that the legislature intended to use the phrase "when the railroad crosses any street, road, or high-

way'' in a restricted sense, as applying only to grade-cross-ings. In this connection it is urged that, as the primary object of requiring warning is to guard against the danger of collision at the crossings of highways by railroads, which can only occur at grade, the statute was only intended to apply to prevent such collisions; that this was the object in view in the legislative mind when the section was enacted, and as such collisions are rendered impossible by overhead crossings, the section was not intended to apply where such crossings existed.

While it is true that the primary object of requiring signals at crossings is to prevent collisions, still this was not the only purpose the legislature had in view. It recognized other dangers, and the more general purpose was, that by giving such signals, travelers upon the public highway near the crossing might be warned of the approach of the train and be afforded an opportunity to guard themselves against any harm or danger by reason of its approach. The construction of an overhead bridge across a highway obviates, it is true, the danger of collision, but it does not remove the danger to persons driving upon the highway, at or near the crossing, which may arise from the sudden and unannounced approach of the train to the bridge, and the consequent frightening of their teams. The liability of horses to become frightened at sudden and unusual noises is matter of common knowledge, and while the giving of such signals may not remove all danger therefrom, yet when given at the proper time and place as provided by the statute, they at least tend to lessen the danger by putting the traveler approaching the crossing upon his guard, and giving him an opportunity to remain at a safe distance with his team, or to take such precautionary measures with reference to it as may be necessary for his and their safety.

As said by the court in *People* v. *New York Central R. R.,* 25 Barb. 203, confirmed by the supreme court of New York in 13 N. Y. 81, in speaking of the objects to be attained un-der a section of the New York statute identical with our sec-tion under consideration: "The hazards to be provided against were twofold; (1) the danger of actual collision at the crossing, and (2) that of damage by the frightening of teams traveling upon the public highway; and to guard

against the latter peril it was as important to provide for a proper warning when the railroad passed over the highway at an elevation, which allowed a passage upon the highway underneath, as when it passed upon the same level, to enable those passing upon the highway to place their teams in such positions of security as would best guard against injury from their fright. But, whatever may have been the reason, it is sufficient that the legislature have deemed the performance of this duty, which is not onerous upon the company, sufficiently beneficial to the public to secure its performance by the imposition of a penalty,"—a penalty which our statute also imposes.

Upon this same subject it is said by the supreme court of Kentucky in *Rupard* v. *Chesapeake etc. R. R. Co.,* 88 Ky. 284, [11 S. W. 70]: "Injury may occur to the traveler at the crossing in two ways, namely: By collision with him, or by scaring the horse that he is riding or driving whereby he is injured. It is the duty of the appellee (the railroad) in approaching a crossing, if danger to the traveler in either of the ways above mentioned may be reasonably apprehended, to give timely notice of its approach, in order that a traveler may not only be warned not to come in collision with the train, but secure himself from injury by his frightened horse. By the trains crossing the highway on a trestle, there is no danger of a collision with the traveler on a highway, but if he should be under the trestle with his horse while the train is passing over it, the danger is increased, for it is well known that a horse is more likely to scare at a sound made over his head than when the same sound is made on the ground."

It is suggested by counsel for respondent that there is no more reason why signals should be given at crossings of the character here involved than when the railroad and the public road run parallel to each other. Aside from the fact that the language of the statute requires these signals at all crossings, it is, we think, quite obvious that a greater reason exists for them in the one case than in the other. It is never absolutely necessary that a public highway, in any case, should parallel a railroad at an unsafe distance. On the other hand, in the very nature of things, there must be points at which public highways and railroads must necessarily intersect each

other, and where danger to travelers by team is much more likely to arise than upon the highway paralleling the railroad, and, realizing the greater danger which must exist from the necessity of having highways crossed by railroads, the legislature has provided for greater precautionary measures to meet the danger which this necessity creates.

It is apparent, therefore, from what has been said, that the purpose of the statute is not alone to require warnings so as to prevent collisions, but also to guard against injury to travelers from the frightening of their teams; to afford as much security as possible against accidents at or on such crossings, by requiring notice to travelers of the approach of the train. If the restricted construction which respondent claims for it should be placed on the section of the code, this security to the public would be taken away. On the other hand, reading the language as it is plainly written, there is extended to the public all the practical protection which can be afforded against the danger at such crossings, and which it is clear the statute was intended to secure.

There have been but few authorities cited upon either side bearing directly upon the points we have been discussing.

The New York statute, considered in the cases from the courts of that state to which we have referred, is, in its essential particulars, the same as the provisions of our code section. It uses the same plain and comprehensive language, requiring warning by whistle or bell to be given when the railroad "shall cross any traveled public road or street," and it was determined by the courts of that state that under this provision, as the language used in the statute was broad enough to include all crossings, it was required thereby that the railroad give the statutory signals, even when the crossing of the highway by the railroad was overhead. The Kentucky case referred to, and the case of *Pennsylvania R. R. Co.* v. *Barnett,* 59 Pa. St. 259, [98 Am. Dec. 346], cited by appellant, while not involving the construction of any statute upon the subject, very clearly state the necessity for and reasons why warnings for the protection of travelers with teams at the crossing should be given by a railroad of the approach of its train, where the track crosses the highway above or below grade—reasons which doubtless the legislature of this state bore in mind when it provided in general terms that such

warning should be given at all crossings, without limitation as to grade.

In support of its claim that the sections of the statute should be given the restricted meaning it contends for—that it only applies to grade-crossings—respondent relies upon the cases of *Favor* v. *Boston etc. R. R. Co.*, 114 Mass. 351, [19 Am. Rep. 364]; *Jenson* v. *Chicago etc. Ry. Co.*, 86 Wis. 589, [57 N. W. 359]; *Missouri etc. Ry. Co.* v. *Thomas,* 87 Tex. 282, [28 S. W. 343]; and *McElroy* v. *Georgia etc. Ry. Co.*, 98 Ga. 257, [25 S. E. 439].

All these cases involved the question whether the statutes of the several states in which the cases were determined provided for the giving of warnings at crossings above or below grade. It was held that they did not, and this conclusion was reached from a particular examination of the statute in each state.

An examination of the section of the statute referred to in the opinion in the Massachusetts case shows that it provides for signals "eighty rods from the place where the road crosses a highway . . . upon the same level therewith." The court held that the statute required signals only at crossings on grade, which, of course, is what the statute plainly says. In the Wisconsin case the attorney for respondent (plaintiff in the court below) conceded in his argument, and it is so intimated in the opinion, that the statute of that state did not require a warning to be given at the overhead crossing where the accident occurred.

In the Texas case, while the statute did not say that the warning should be given at grade-crossings, the court, construing the language, held that it must refer only to grade-crossings, because it provided that the train should come to a full stop under certain conditions, which could only apply to grade-crossings. The Georgia court reached a similar conclusion based upon a construction of the language of the statute of that state, which provided that the engineer should commence giving warning at a certain distance from the crossing, and simultaneously commence checking and keep checking the speed of the locomotive "so as to stop in time should any person or thing be crossing said track or said road." The court held that in requiring a slacking of speed so as to readily stop if any one was crossing the track, the

section could only apply to grade-crossings; that there could be no occasion for stopping the train for the protection of persons not on, or about to go upon, the track itself.

It will be observed that in all these cases cited by respondent either the sections of the statute under examination expressly applied to grade-crossings only, or, when carefully examined, showed from their phraseology that they were only meant to be applied to grade-crossings.

Our section, however, is, as we have said, so plain in its language as not to be open to construction. It says nothing about any particular kind of crossing, but speaks of crossings generally. To say that when it so speaks of crossings generally, it means crossings at grade only, would be to place a limitation upon the section by construction which can find no warrant from anything in the language of the section itself.

We are satisfied that the demurrer was improperly sustained, and the judgment is accordingly reversed.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.