[Civ. No. 6817.   Third Dist.   Jan. 14, 1944.]

JOHN W. SAMUELSON, Respondent, v. WILLIS F. SIEFER et al., Appellants.

Van Dyke & Harris for Appellants.

Wallace Shepard and R. C. Fleming for Respondent.

THOMPSON, J.—Judgment was rendered against the defendants for injuries received by the plaintiff in a collision

between plaintiff's motorcycle and defendants' automobile which occurred on Del Paso Boulevard in North Sacramento. The cause was tried by the court sitting without a jury. The court found that the accident occurred as the result of negligence on the part of the driver of defendants' car in suddenly turning the machine across the course of plaintiff's approaching motorcycle, in an effort to cross the boulevard, without giving the warning signal or complying with the other provisions of section 544 of the Vehicle Code. From the judgment which was rendered accordingly, the defendants have appealed.

Del Paso Boulevard is the main traveled highway extending north and south through the business portion of North Sacramento. It is more than sixty feet in width, and contains three traffic lanes on either side of the center white line of the street. Douglas Avenue enters the boulevard at a right angle at the point where the accident occurred. The defendant, D. P. Siefer, maintains a store in a building fronting the boulevard on the west side at a point about one hundred feet north of Douglas Avenue. The Original Auto Wreckers building is located on the same (west) side of the boulevard about fifty feet north of defendants' store building.

On November 18, 1940, at six o'clock in the evening on which the accident occurred, the defendants' automobile was parked at the curbing in front of the store. It was then dark, and the lights on all vehicles were turned on. It was not raining and the paved surface of the boulevard was dry. At the time last mentioned Willis P. Siefer, at the request of his father, D. P. Siefer, entered their Hudson automobile and slowly drove southerly along the second lane from the western curbing of Del Paso Boulevard, with the intention of crossing to the easterly side of the boulevard when he reached Douglas Avenue, about a hundred feet distant. There was then no traffic to prevent him from driving in the third lane adjacent to the center line of the street. Just at that time the plaintiff, riding his motorcycle southerly along a course about two feet west from the center white line of Del Paso Boulevard, reached a point fifty or sixty feet north of the store where defendants' car was parked. The motorcycle was traveling at the rate of "twenty or twenty-five miles an hour." Plaintiff saw defendants' machine "pulling away from the west curb." He testified that he first observed defendants' car *"right around* opposite the Original Auto

Wreckers.'' That is clearly a mistake for defendants' car started from a position in front of their store, which was fifty feet further south on the boulevard. Plaintiff's motorcycle was then fifty or sixty feet north of the store, which would place it about opposite the Original Auto Wreckers building. The defendants' Hudson machine was slowly driven along the second lane at a rate of speed not to exceed eight to twelve miles per hour. At that time a man by the name of Alvin Cowing was also driving his Chevrolet machine southerly along the second lane of Del Paso Boulevard at the rate of twenty-five miles an hour. Cowing said he saw the defendants' car ''come out in front of me from the curb.'' The plaintiff's motorcycle was then traveling along the third lane near the center line a few feet to the rear of Cowing's machine. The plaintiff saw Cowing's car and also the defendants' automobile as it turned out from the curbing in front of Cowing's machine. We assume that Willis Siefer's conduct in slowly driving his car along the second lane in front of Cowing's machine had the effect of diminishing his rate of speed so as to enable the plaintiff to overtake those automobiles without increasing his speed from the asserted rate of twenty or twenty-five miles an hour. After the two automobiles had traveled the distance of nearly one hundred feet from the store to Douglas Avenue, at which point the defendants' car suddenly turned left to cross the boulevard without a warning signal, Cowing's machine was still following behind defendants' car. It is not disputed that Willis Siefer suddenly turned to his left across the third lane in front of the approaching motorcycle without a warning signal. It is also reasonable to assume he made that turn without due caution to first ascertain that it was ''reasonably safe'' to do so. Cowing testified that Willis Siefer ''with no signal whatsoever turned left right in front of me.'' Cowing was then driving his car about twenty-five feet behind defendants' machine, and he was compelled to ''swerve'' to his right to avoid a collision. Cowing stated that plaintiff's motorcycle was then traveling in the left lane near the center line of the highway only about fifteen or twenty feet to the rear of his car when the defendants' automobile suddenly turned across the highway without a warning signal. The plaintiff was unable to turn to his left across the white line on account of an approaching automobile. Confronted with that emergency, and being unable to turn to his right because of the presence

of Cowing's machine, he applied his rear and front emergency brakes with full force. The motorcycle toppled over and threw the plaintiff to the pavement. Both the plaintiff and his motorcycle slid with great force directly into the defendants' automobile. The plaintiff was seriously bruised and suffered fractures of both the tibia and fibula bones of the left leg. He remained in a hospital for treatment for sometime. The fractures were reduced with difficulty. It was necessary to use Lane plates and screws to retain the fractured bones in proper position.

The defendants contend that the findings and judgment are not supported by the evidence for the reason that even if Willis Siefer, the driver of defendants' automobile, was guilty of negligence in failing to comply with the provisions of section 544 of the Vehicle Code before turning to his left across the boulevard, those omissions were not the proximate cause of the accident. It is further asserted that plaintiff was guilty of contributory negligence as a matter of law, in failing to watch defendants' machine continuously, and in driving his motorcycle at an excessive rate of speed. It is not contended the judgment is excessive.

Section 544 of the Vehicle Code provides in part that:

"(a) No person shall turn a vehicle unless and until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided herein in the event any other vehicle may be affected by such movement.

"(b) Any signal of intention to turn right or left shall be given continuously during the last 50 feet traveled by the vehicle before turning."

We may assume, in support of the findings, that the driver of defendants' automobile was prima facie guilty of negligence in attempting to turn to his left across the boulevard without giving the required warning signal of extending his arm horizontally (sec. 546, Veh. Code) while he was driving the last fifty feet before he made the turn, and also in failing to ascertain that it was reasonably safe to then attempt to cross the boulevard ahead of the approaching motorcycle, as required by the above quoted section. The violation of a statute prescribing traffic rules is prima facie evidence of negligence as a matter of law. (19 Cal.Jur. 632, sec. 65; 13 Cal. L. Rev. 428.) The findings are amply supported by the evidence in that regard.

█ The appellants, however, contend that the violation of section 544 of the Vehicle Code was not the proximate cause of the accident because it appears the plaintiff was also guilty of contributory negligence in failing to watch the defendants' car continuously, and that the plaintiff therefore would not have seen the warning signal if it had been given. We think there is no merit in that contention. The burden was on the defendants to prove by a preponderance of the evidence that the plaintiff was guilty of contributory negligence which proximately caused the accident. That was a problem for determination of the trial judge. His conclusion in that regard may not be disturbed on appeal, if there is any evidence or reasonable inferences to be drawn therefrom to support the finding that plaintiff was not guilty of contributory negligence. Even if reasonable minds may differ regarding that question, this court is not warranted in reversing the conclusion of the trial court. The application of the foregoing rule is aptly stated in the case of *Wynne* v. *Wright,* 105 Cal.App. 17 [286 P. 1057], quoting from *Johnson* v. *Southern Pac. R. R. Co.,* 154 Cal. 285 [97 P. 520], as follows:

" 'It is only where no fact is left in doubt, and no deduction or inference other than negligence can be drawn by the jury from the evidence, that the court can say, as a matter of law, that contributory negligence is established. Even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence, the question is one of fact for the jury.' "

█ It was not absolutely necessary for the plaintiff to keep his eyes on defendants' automobile all the time he was approaching the intersection. Several vehicles were traveling both ways along the boulevard in that vicinity. It was essential for him to observe the movements of all cars in his vicinity. The degree of care required in watching the movements of a particular machine depends upon the facts and circumstances existing at the time and place of the accident involved in the suit. It was necessary for plaintiff to use that degree of care, only, which would be required of a reasonably prudent driver of a motorcycle under similar circumstances. (4 Blashfield's Enc. of Automobile Law, p. 189, sec. 2391.)

█ Considering the testimony as a whole, we are of the opinion the finding of the court that plaintiff was not guilty of contributory negligence is adequately supported by the evidence.

It is true that in response to direct questions propounded

by defendants' attorney, the plaintiff conceded that he "only had a fleeting glimpse" of the defendants' car before he saw it directly ahead of his motorcycle. It is also true that when he was asked if he did not see that car "traveling right down the extreme outside of that road," he said "I didn't keep my eyes on it . . . there was other traffic on the highway." But on the contrary the plaintiff was examined at length by defendants' attorney, regarding the rate of speed at which defendants' car was traveling. In effect, he said he was watching it and that it was traveling about five to ten miles an hour. This colloquy occurred upon that subject:

"Q. There wasn't any time that night that you even saw that automobile while you were traveling other than in a distance of twenty feet. Isn't that true? A. That's true, yes. Q. And even during that twenty feet you weren't watching it, were you? A. Well, *I must have watched it if I saw it.*"

A reading of plaintiff's entire testimony convinces us that he was entirely fair and frank. It is quite evident that he was alert and watchful to see the movements and approximate locations of all vehicles in the vicinity of the accident. He saw defendants' machine leave the curbing in front of the store, and says that it traveled slowly. He also observed Cowing's car traveling behind the defendants' machine in the second lane. It follows that if defendants' car was traveling only about ten miles an hour, then Cowing's machine could not have exceeded that rate of speed. The evidence shows that plaintiff's motorcycle was only fifty or sixty feet behind Cowing's machine when defendants' car left the curbing. It was a hundred feet from the store to Douglas Avenue where the turn was made. The slow speed of the other machines enabled the plaintiff to reach a point opposite Cowing's car by the time the defendants' machine appeared in his pathway. There is evidence that defendants' machine did not slacken its speed before making the turn. Fairly construing the entire evidence, it reasonably appears the plaintiff was sufficiently alert and watchful to have seen Willis Siefer's arm signal if he had extended the arm continuously, as the statute requires, for a distance of fifty feet before the left turn was made. The only obstacle that could have possibly prevented plaintiff from seeing defendants' car *all the time* was the Cowing machine. Even that should not have prevented plaintiff from seeing an extended arm the moment

the forward car began to turn to the left. Moreover, due caution on the part of the driver of defendants' machine should have prompted him to travel in the easterly lane since he was intending to make a left turn at Douglas Avenue. If he had done so, the plaintiff would have been in no danger of a collision. The court was entitled to take into consideration all those circumstances in determining whether the respective parties were guilty of negligence. At least, we are unable to say, as a matter of law, that the plaintiff was guilty of contributory negligence in failing to watch the defendants' automobile constantly since he had no reason to assume it would suddenly turn from the second lane to cross the boulevard ahead of his motorcycle.

Nor may we say the plaintiff was guilty of contributory negligence in driving his motorcycle at an excessive rate of speed. There is some conflict of evidence in that regard. But there is an abundance of testimony to support his statement that he was not running at a rate of speed in excess of twenty or twenty-five miles an hour. The very fact that he traveled less than a hundred and fifty feet before he overtook Cowing's car which was running only about ten miles an hour, is substantial proof of that assertion. The evidence does not warrant this court in determining, as a matter of law, that the plaintiff was driving his motorcycle at an excessive rate of speed.

The defendants are not aggrieved by the order of court granting them a new trial with respect to that portion of the judgment which awarded plaintiff special damages in the further sum of $450 for loss of wages during the time he was incapacitated from work on account of the injuries he received as a result of the accident. The defendants' motion for new trial on other grounds for the reasons heretofore stated was properly denied.

The order granting a new trial on the issue of damages resulting from loss of wages only, and the judgment, other than the award of $450 special damages, are affirmed, respondent to recover costs on appeal.

Adams, P. J., and Peek, J., concurred.