## PAN AMERICAN AIRWAYS, Inc., et al. v. UNITED STATES.

### No. 10300.

Circuit Court of Appeals, Fifth Circuit.

April 29, 1943.

J. E. Yonge, of Miami, Fla., for appellants.

Herbert S. Phillips, U. S. Atty., of Tampa, Fla., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

The Secretary of Labor found that, on February 3, 1935, Pan American Airways, Inc., an air transportation company, had transported a passenger afflicted with pulmonary tuberculosis from Nassau, Bahamas, to Miami, Florida, in violation of Chapter 29, Section 9, of the Immigration Act of 1917, as amended.[1] The Secretary accordingly directed the company and its surety to pay to the Collector of Customs at Tampa the sum of $1,000 plus passage money, the amount of the fine fixed by the statute for the offense. The passage money was refunded, but the fine was not paid; and this suit was brought by the United States to enforce payment. Judgment was entered below for the Government, and appellants have appealed.

These are appellants' contentions: (1) That the said Immigration Act has no application to transportation by air, but that the rights and obligations of carriers by air with respect to immigration are fixed by the Air Commerce Act of 1926, 49 U.S.C.A. §§ 171–184, and the regulations promulgated thereunder, which impose a maximum fine of $500 for the offense committed; (2) that the Government's declaration failed to trace the authority under which the Secretary purported to act in imposing the fine, and, by reason thereof, appellants' demurrer should have been sustained; and (3) that Section 7(d) (3) of the Air Commerce Act, by which the Secretary derived authority to regulate the application of immigration laws to civil air navigation, was an unconstitutional delegation of legislative power.

We have no occasion to consider or decide the constitutional question thus posed, for we think the relevant section of the Immigration Act of 1917, as amended in 1924, has application to air commerce and is determinative of the merits of the appeal. This being true, whatever may be the provisions of the Air Commerce Act and whether or not those provisions are unconstitutional are of no concern here. Moreover, we have examined the declaration, and find no fault in it. Our discussion, therefore, will be confined to the first issue, whether the Immigration Act is applicable to air commerce and, if so, whether its provisions properly were applied to the facts of this case.

Chapter 29, Section 9, of the Immigration Act of 1917, as amended in 1924, makes it unlawful for any person, including any transportation company other than railway lines entering the United States from

---

[1] 39 Stat. 880, 43 Stat. 166, 8 U.S.C.A. § 145.

foreign contiguous territory, to bring into the United States, either from a foreign country or any insular possession of the United States, any alien afflicted with tuberculosis in any form; and, if it appears to the satisfaction of the Secretary of Labor that any alien thus brought to the United States was so afflicted at the time of foreign embarkation, and that the existence of such disease might have been detected by means of a competent physical examination at such time, such person or transportation company shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 plus passage money for each violation of the section.

That Pan American Airways, Incorporated, was both a person and a transportation company other than a railway line, and was etymologically within the language of the statute, cannot be seriously questioned; but it is argued that commerical air-craft transportation was unknown in 1917, when the statute was enacted, and could not have been within the contemplation of Congress or intended to be embraced within the scope of the Act. The case of McBoyle v. United States, 283 U. S. 25, 51 S.Ct. 340, 75 L.Ed. 816, holding that the Motor Vehicle Theft Act, 18 U.S.C.A. § 408, did not apply to air craft because the language of the statute and the legislative history surrounding its enactment indicated the Congressional intent that motor vehicles should mean only surface vehicles, is heavily relied upon.

The obvious answer to the contention is that the statute here under consideration was designed to protect the health and general welfare of the nation against the hazards incident to the importation of aliens afflicted with any loathsome or contagious disease. The Congressional intent was to prevent such immigration, regardless of the means by which the importation might be accomplished,[2] and language sufficiently comprehensive to include this offender was deliberately used to effectuate that purpose. With the sole exception of aliens imported by rail from foreign contiguous territories, any person or transportation company that brings to this country any alien so afflicted violates the Act.

The fine levied against appellants was in the amount fixed by the statute, and was imposed by the proper authority after administrative proceedings contemplated by the statute. The cause was correctly decided by the court below, and its judgment is

Affirmed.

HUTCHESON, Circuit Judge (dissenting).

I agree with the position of appellants that for the things done here, except for the regulation under the Air Commerce Act making that section applicable, they are not liable as for a breach of the provisions of Act 9 of the Immigration Act of 1917, as amended,[1] and, therefore, may not be penalized as therein provided. Their liability is for a breach of the regulation promulgated by the Secretary of Labor under the authority of § 7(d) (3), Air Commerce Act of 1926,[2] and the penalty to which they are subject is the penalty fixed by the provisions of § 11(b) of that act[3] for the violation of the regulation, to-wit, a civil penalty of $500.00. I, therefore, dissent from the majority opinion to the contrary effect.

The appeal presents three questions, (1) whether Section 9, by its terms, and independent of the regulation promulgated under authority of the Air Commerce Act, applies to air commerce from foreign countries and, therefore, includes appellant within its terms, (2) whether the Air Commerce Act, in authorizing the Secretary of Labor "by regulation to provide for the application to civil air navigation of the laws and regulations relating to the administration of the immigration laws to such extent and upon such conditions as he deems necessary", intends to authorize the Secretary to prescribe the penalties to follow such breach, and (3) whether, if the statute does so intend, it is an unpermissible delegation of authority. The majority opinion, holding that Section 9, by its terms, applies and governs here, passes the other questions without decision. I think it quite plain that this cannot be done. The Act of 1917 does not, except for the regulation, apply to appellants. Their liability under that section is dependent entirely upon the regulation making

---

2 Cf. Oceanic Steam Nav. Co. v. Stranahan, 214 U.S. 320, 29 S.Ct. 671, 53 L.Ed. 1013.

1 8 U.S.C.A. § 145.

2 49 U.S.C.A. § 177(d)(3).

3 49 U.S.C.A. § 181(b).

it applicable, and in specifically providing the penalty for a breach of regulations made under authority of the Air Commerce Act, the intention of Congress was clearly manifested that the penalty of $500.00 provided in the 1926 act, and that alone, was to apply.

My first difference with the majority is as to the meaning of Section 9. They declare its effect to be that "with the sole exception of aliens imported by rail from foreign contiguous territories, any person or transportation company that brings to this country any alien so afflicted violates the Act". I cannot read the act that way. Like so many other customs and immigration acts and regulations do,[4] Section 9 of the Act of 1917 contains two distinct provisions, one, dealing with bringing aliens in from foreign contiguous territory, "any person including any transportation company, other than railway lines, entering the United States from foreign contiguous territories"; the other, dealing with bringing aliens in by water, "the owner, master, agent or consignee of any vessel operating from a foreign country or any insular possession of the United States". If the importation by airplane here had been from a foreign contiguous territory, and if the Act of 1926 had not in terms made it plain that the immigration acts do not, unless adopted by regulation, apply to airplanes, it might, but for the complete absence of air borne commerce at the time the act was passed, be that the act could be held to apply. Since, however, the bringing in here was from non-contiguous territory, the act could only apply if it be

considered that an airplane is a "vessel" within the meaning of the language of the section. It would be a strange construction of that act, in the light of the normal and usual meaning of the word "vessel", of the nonexistence of air borne commerce, and especially in the light of the provisions of the 1926 Air Commerce Act, in terms declaring that an airplane was neither a vessel nor a vehicle, to hold that it was a vessel and as such was included in the act.

This distinction between contiguous and non-contiguous foreign territory is a substantial one, and, as we pointed out in the Hunter case, note 4, supra, it would not be competent for the secretary under the delegation of the 1926 act to make provisions applicable to importations from non-contiguous territory apply to airplanes importing from contiguous territory or vice versa. The immigration regulations, adopted under authority of the Air Commerce Act[5] recognizes this rule. Every line of Section 9, except the first four which deal with foreign contiguous territories, deals with vessels. No part of it purports to deal with anything else, and not a single decision can be found except this one in which the section has been held to apply of its own force to aircraft. If, therefore, the act of 1917 stood alone and without the aid to its construction furnished by the 1926 Air Commerce Act, it would furnish no basis whatever for its application to an aircraft bringing a diseased alien from a non-contiguous foreign country. But it does not stand alone. It must be read in the light of the

---

[4] 8 U.S.C.A., §§ 216 and 217 provide:

"§ 216. It shall be unlawful for any person, including any transportation company, or the owner, master, agent, charterer, or consignee of any vessel, to bring to the United States by water from any place outside thereof (other than foreign contiguous territory), * * * *".

"§ 217. The Commissioner of Immigration and Naturalization, with the approval of the Attorney General, shall have power to enter into contracts with transportation lines for the entry and inspection of aliens coming to the United States from or through foreign contiguous territory."

Cf. United States v. Hunter, 5 Cir., 80 F.2d 968, an airplane case involving the distinction between contiguous and non-contiguous territories.

[5] "Civil aircraft engaged in foreign air commerce and bringing passengers from Canada or Mexico, shall, for the purpose

of the immigration laws and regulations, except as herein provided for, be regulated as are other common carriers bringing aliens to border ports of entry from such countries." Sec. 1: "All other civil aircraft engaged in foreign commerce shall, for the purpose of the immigration laws and regulations, except as otherwise provided, be treated as vessels." Immigration Rule 5, subd. (a) par. 2.

"Aircraft arriving from contiguous foreign territory shall be subject to the customs laws and regulations applicable to vehicles arriving from contiguous foreign territory, and where aircraft arriving from any place outside of the United States, shall be subject to the customs laws and regulations applicable to vessels so arriving." Code of Federal Regulations of the United States, Title 8—Aliens and Nationality, Sec. 116.12, Part 116, Civil Air Navigation.

Air Commerce Act of 1926 which undertakes to provide a complete code for the regulation of aircraft in commerce, including provisions for making applicable to air commerce, customs, navigation, health, immigration and immigration laws and regulations by regulation of the Secretaries of the Treasury, Commerce and Labor. That act provides in Section 7(a):

"The navigation and shipping laws of the United States, including any definition of 'vessel' or 'vehicle' found therein and including the rules for the prevention of collisions, shall not be construed to apply to seaplanes or other aircraft or to the navigation of vessels in relation to seaplanes or other aircraft."

It then provides in Subdiv.(b), (c) and (d) that the secretaries, respectively, of the Treasury, Commerce, Labor, and, now, by amendment, the Attorney General, may by regulation provide for the application to civil air navigation of the laws and regulations relating to the administration of the customs and public health laws, the entry and clearance of vessels, and the administration of the immigration laws "to such extent and upon such conditions as he deems necessary". Then in 11(b) providing penalties, it is universally and without exception provided:

"Any person who (1) violates any provision of subdivision (a) of this section or any entry or clearance regulation made under section 7, or (2) any customs or public health regulation made under such section, or (3) any immigration regulation made under such section, shall be subject to a civil penalty of $500 which may be remitted or mitigated by the Secretary of Commerce, the Secretary of the Treasury, or the Secretary of Labor, respectively, in accordance with such proceedings as the Secretary shall by regulation prescribe. * * *" 44 Stat. 574.

A careful inquiry as to, and investigation of, immigration practices, regulations and rules discloses no application of Section 9 of the Act of 1917 to aircraft prior to the passage of the aircraft act of 1926, and that since that time application of im-

migration laws to aircraft is made under the provisions of the regulations enacted under the authority of the Aircraft Act. Each of the other secretaries to whom the delegation of authority was made has recognized the act as completely comprehensive as to, and as not authorizing them to impose, penalties. Each of them in making the customs and navigation laws applicable has prescribed that breach of any of the laws so made applicable by regulation shall subject the offender to the civil penalty of $500.00 the Air Commerce Act imposes for a violation thereof. The Secretary of Labor alone has attempted to claim delegated authority to impose additional penalties. Providing that the penalty of $500.00 fixed in the act shall apply generally, he has further attempted to provide that where the acts made applicable by regulation fix different penalties, those penalties so fixed, and not the $500.00 fixed in the act shall apply.[6] The statute not purporting to authorize such action, it is not necessary to inquire whether it could have done so. I think it clear that the judgment should be reversed, and I dissent from its affirmance.

---

[6] Code of Federal Regulations of the United States, Title 8, Aliens and Nationality, Sec. 116.60—Penalties—, Part 116, Civil Air Navigation provides:

"(a) Any person who violates any provision of this part which relates to immigration shall be subject to the civil penalty of $500 authorized by section 11(b), Air Commerce Act of 1926, as amended (49 U.S.C. 181(b)), except that where such offense in connection with an aircraft would be a violation of the immigration laws and general regulations if the aircraft were a vessel (operating on water), the penalty shall be the same as would apply in the case of a vessel."