## UNITED STATES v. HUNTER.
### No. 7713.

Circuit Court of Appeals, Fifth Circuit.
Jan. 3, 1936.

John W. Holland, U. S. Atty., of Jacksonville, Fla.

L. A. Schroeder, Jr., and Marion E. Sibley, both of Miami, Fla., for appellee.

Before SIBLEY, HUTCHESON, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

On April 22, 1933, Fokker monoplane No. NC–9133 arrived from the British

West Indies into Florida carrying about forty cases of liquors whose value does not appear, which were secretly unloaded in a field without the plane having reported arrival, been entered at the customs, received permit to unload or to proceed inland, or having filed manifest. It was later seized, and on December 5, 1933, a libel for forfeiture was filed. L. M. Hunter was allowed to file an intervention setting up that he had a purchase-money mortgage for $400 on the monoplane which entitled him to defend it, and because of his innocence to protect his interest against forfeiture. To save expense of keeping, the plane was sold for $370 and that sum paid into court. On a trial the facts above stated were found by the court on stipulated evidence, but because the libel was expressed to be brought under sections 459 and 460 of the Tariff Act of 1930, 19 U.S.C.A. §§ 1459, 1460, which the court thought inapplicable to airplanes, the libel was dismissed and the fund awarded to Hunter. On appeal the United States contend that the cited sections are by section 644, 19 U.S.C.A. § 1644, made capable of application to aircraft by regulations of the Secretary of the Treasury, and have been so applied by him in Regulations, Art. 253 and Art. 254. In reply, appellee Hunter contends that to apply these regulations to forfeit this airplane would be to recognize secretarial legislation.

The libel alleged the arrival of the plane in the Nineteenth Collection District, Fla., from the British West Indies, the failure of the person in charge to give notice of arrival to the nearest customs officer, and the unloading from it of unknown merchandise without report of entry or the filing of a manifest "whereby it became subject to forfeiture under sections 459 and 460 of the Tariff Act of 1930." These sections, copied in the margin,[1] apply only to "vessels and vehicles" arriving from "contiguous countries." The definition of "vessel" and "vehicle" contained in section 401 (a, b), 19 U.S.C.A. § 1401 (a, b), expressly excludes aircraft. Moreover, we take judicial notice that the British West Indies are not a "contiguous country" within the meaning of the act. Etymologically and generally contiguous means touching together, in contact with. An examination of the cases collected in Words and Phrases shows that this meaning is generally applied by the courts, but a looser meaning has been given where the legislative or contractual intent so requires. The term "foreign contiguous territory" has appeared in our immigration laws at least since 1882, Supp.Rev.Stats. c. 374, 8 U.S.C.A. §§ 145, 216, and we are informed it has always been construed in the strict sense as referring only to Mexico and Canada. Coastal islands belonging to those countries would no doubt be included with them.

---

[1] Sections 459 and 460 of the Tariff Act of 1930 (19 U.S.C.A. §§ 1459, 1460):

"Sec. 459. Contiguous Countries—Report and Manifest.—The master of any vessel of less than five net tons carrying merchandise and the person in charge of any vehicle arriving in the United States from contiguous country, shall immediately report his arrival to the customs officer at the port of entry or customhouse which shall be nearest to the place at which such vessel or vehicle shall cross the boundary line or shall enter the territorial waters of the United States, and if such vessel or vehicle have on board any merchandise, shall produce to such customs officer, a manifest as required by law, and no such vessel or vehicle shall proceed farther inland nor shall discharge or land any merchandise, passengers, or baggage without receiving a permit therefor from such customs officer. The master of any such vessel, or the person in charge of any such vehicle who, fails to report arrival in the United States as required by the provisions of this section shall be subject to a fine of $1.00 for each offense. If any merchandise or baggage

is unladen or discharged from any such vessel or vehicle without a permit therefor, the same, together with the vessel or vehicle in which imported, shall be subject to forfeiture; and if any passenger is unladen or discharged from any such vessel or vehicle without a permit therefor the master of such vessel or the person in charge of such vehicle shall be liable to a penalty of $500 for each such passenger so unladen or discharged.

"Sec. 460. Same—Penalties for Failure to Report or File Manifest.—If any merchandise is imported or brought into the United States in any vessel or vehicle from a contiguous country without being so reported to the collector, or in case of the neglect or failure of the master of the vessel or the person in charge of the vehicle to file a manifest therefor, such merchandise and the vessel or vehicle shall be subject to forfeiture and the master of such vessel or the person in charge of such vehicle shall be liable to a penalty equal to the value of the merchandise imported in such vessel or vehicle which was not reported to the collector or included in the manifest."

970

The Danube (D.C.) 55 F. 993. All lands separated by water touch one another in a sense beneath the water, but when the intervening water is the high seas over which neither of them has exclusive jurisdiction they are not contiguous countries though no dry land intervenes. Ireland was not thought contiguous to the United States in Hamburg-American Line v. United States, 291 U.S. 420, 54 S.Ct. 491, 78 L.Ed. 887, nor the West Indies in Bermuda & West Indies S. S. Co. v. Elting (D.C.) 45 F.(2d) 411; nor Barbadoes in Lamport & Holt, Ltd. v. Elting (C.C.A.) 64 F.(2d) 93; else the penalties there enforced would not have been incurred. This monoplane from the British West Indies did not arrive from a contiguous country. It follows that sections 459 and 460 referred to in the libel do not themselves authorize forfeiture.

 But the reference to them does not prevent forfeiture if the facts stated in the libel authorize it under other effective laws and regulations. In the case of The Hoppet, 7 Cranch, 389, 3 L.Ed. 380, it was held that a libel for forfeiture, analogized to an indictment, ought to contain a statement of the facts, and that a reference to the forfeiting statute would not aid it. "The reference to the statute may direct the attention of the court and of the accused to the particular statute by which the prosecution is to be sustained, but forms no part of the description of the offense." For like reason an inaccurate statutory reference is not fatal. It is, after all, but the pleader's opinion as to what law the facts pleaded violate, but the pleaded facts alone fix the offense. This is well established as to indictments. Williams v. United States, 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509; Hammer v. United States, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118; and more directly in point are Ex parte King (D.C.) 200 F.

622; Biskind v. United States (C.C.A.) 281 F. 47, 28 A.L.R. 1377; Taylor v. United States (C.C.A.) 2 F.(2d) 444; Harper v. United States (C.C.A.) 27 F.(2d) 77; United States v. Tye Ah Woo (D.C.) 40 F.(2d) 751. By the provisions of section 11 (b) of the Air Commerce Act, 49 U.S. C.A. § 181 (b), proceedings to forfeit an airplane though seized on land are, except as to a right to jury trial, to conform as nearly as may be to civil suits in admiralty. No greater strictness of pleading than in an indictment at law can be insisted on; though in civil cases the difficulty may and should usually be removed by amendment. The maxim, "Falsa demonstratio non nocet," is fairly applicable. A complete setting forth of the facts constituting an offense is not hurt by a false reference to the law involved. We must therefore inquire whether this libel is supported by other legal provisions.

██ The appellant calls attention to section 644 of the Tariff Act, which extends the authority given the Secretary of the Treasury and the Secretary of Commerce by section 7 of the Air Commerce Act, 49 U.S.C.A. § 177, to provide by regulations for the application to civil air navigation the laws and regulations relating to the administration of customs and relating to the entry and clearance of vessels respectively, so as to apply in like manner any of the provisions of this Tariff Act or the regulations thereunder; and points to Regulations, Art. 253 and Art. 254, promulgated thereunder and copied in the margin,[2] asserting that they are effective to make sections 459 and 460 extend to the forfeiture of aircraft, and to aircraft from a foreign country whether it be contiguous to the United States or not. A careful reading of the Regulation, Art. 253, shows that it does purport to apply to aircraft ar-

2 Articles 253 and 254 from the Customs Regulations of 1931:

"Art. 253. General Provisions.—Except as otherwise in these regulations provided, aircraft arriving from any foreign port or place, and the merchandise, passengers, and baggage carried therein, shall be subject to the administrative provisions of the customs laws and regulations applicable to vehicles arriving from contiguous foreign territory and to the merchandise, passengers, and baggage carried thereon, respectively. All administrative provisions of the custom laws and regulations applicable solely to vessels, or inconsistent with these regulations, shall be inapplicable to such aircraft, merchandise, passengers, or baggage.

"Art. 254. Penalties.—The appropriate penalties applicable in the case of vehicles arriving from contiguous foreign territory shall be assessed for violations of the customs regulations involving aircraft from any foreign country, except that when the regulation violated is peculiar to aircraft, such as that requiring the first landing to be made at a customs airport of entry, or that requiring advance notice of arrival, the penalty of $500 prescribed by section 11 of the air commerce act of 1926 shall be imposed."

riving from any foreign port or place the administrative provisions of the customs laws and regulations touching vehicles from *contiguous* foreign territory, and Art. 254 similarly applies the penalties prescribed in case of vehicles arriving from foreign *contiguous* territory to aircraft from *any* foreign country. We think this extension of the penal provisions of the statute to be unwarranted by the power of regulation granted. The Tariff Act of 1922, § 401, 19 U.S.C.A. § 231, included aircraft among vessels and vehicles. The Air Commerce Act of 1926 put aircraft in a special class for regulation, and section 7, 49 U.S.C.A. § 177, excluded them from the definition of vessel or vehicle in the navigation laws, but in subsection (b) gave the Secretary of the Treasury authority "by regulation to provide for the application to civil air navigation of the laws and regulations relating to the administration of the customs and public health laws *to such extent and upon such conditions as he deems necessary.*" A similar authority was by subsection (c) given the Secretary of Commerce touching laws relating to the entry and clearance of vessels. The Air Commerce Act in section 11 (b), 49 U.S.C.A. § 181 (b), enacted: "Any person violating any customs or public health regulation made under Section 7 (b) [section 177 (b) of this chapter], or any provision of the customs or public-health laws or regulations thereunder made applicable to aircraft by regulation under such section shall be subject to a civil penalty of $500, *and any aircraft used in connection with any such violation shall be subject to seizure and forfeiture as provided for in such customs or public-health laws,*" etc.[1] Assuming without deciding the general validity of this power to make regulations, we think the plain meaning of the Air Commerce Act as quoted, which by express reference is retained as the measure of the regulatory power granted in section 644 of the Tariff Act, is that *forfeiture* for violation of the regulations made is to be according to the provisions of the customs and health laws which by regulation are made applicable, and "not on such conditions as the Secretary may deem necessary." He can make the customs laws

with their prescribed forfeitures which apply to vessels from foreign countries to be applicable to aircraft from such countries, and those which apply to vessels and vehicles from a contiguous country to be applicable to aircraft from contiguous countries; but he cannot make aircraft from noncontiguous foreign countries subject to the more rigorous provisions made touching arrival from contiguous countries. This monoplane from British West Indies, a noncontiguous country, cannot by regulation be made forfeitable under sections 459 and 460 relating to vessels and vehicles from contiguous countries only.

Section 453, 19 U.S.C.A. § 1453, forfeits a vessel or vehicle for unloading merchandise of a value of $500 or more without a special license where such license is required, but this libel makes no allegations of fact suitable to that section. So Rev. St. §§ 3061 and 3062, 19 U.S.C.A. §§ 482, 483, for the forfeiture of vehicles in which, upon search by officers authorized to search vessels, are found goods introduced into the United States in violation of law, are not satisfied by the present allegations, supposing that the term vehicles in this old act would include an airplane. We are of opinion that no case was made, the allegata corresponding with the probata—as they must do, The Hoppet, 7 Cranch, 389, 3 L. Ed. 380—on which forfeiture should have been adjudged.

It is finally urged that the court should have retained the $370 representing the monoplane for application to the personal penalties incurred by the person in charge. If he were the owner of the plane, a lien is declared by Air Commerce Act, § 11 (b), 49 U.S.C.A. § 181 (b). But it does not appear that he was owner nor that any proceeding to libel the monoplane or its proceeds for this cause was ever filed, nor is it clear that a lien so arising would defeat the prior recorded mortgage of Hunter. We find no error in the disposition of the libel or the fund.

The decree is affirmed.

HUTCHESON, Circuit Judge, concurs in the result.

---

[1] Since the opinion was adopted by the court, it has been noted that the italicized provision came into the law by the amendment of June 19, 1934, 48 Stat. 1116, § 2, and so does not apply to this case. The fact does not invalidate but fortifies the conclusion reached that **no forfeiture ought to be adjudged.**