**VIRGINIA NATIONAL BANK,**
**Plaintiff,**

**v.**

**COMMONWEALTH OF VIRGINIA ex rel. STATE CORPORATION COMMISSION, State Corporation Commission of the Commonwealth of Virginia, Ralph T. Catterall, Jesse Dillon, and H. Lester Hooker, individually and in their capacities as Commissioners of the State Corporation Commission of the Commonwealth of Virginia, Defendants.**

**Civ. A. No. 794-70-N.**

United States District Court,
E. D. Virginia,
Norfolk Division.

Dec. 8, 1970.

Kaufman, Oberndorfer & Spainhour, Norfolk, Va., William P. Oberndorfer, Conrad M. Shumadine, Robert C. Goodman, Jr., Norfolk, Va., for plaintiff.

Andrew P. Miller, Atty Gen. of Virginia, Anthony F. Troy, Asst. Atty. Gen., A. Grey Staples, Jr., General Counsel, State Corporation Commission, Richmond, Va., Jordan, Morris & Hoke, John R. Jordan, Jr., Raleigh, N. C., for defendants.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

The General Assembly of Virginia has provided, by statute, for the establishment of branch banks under certain terms and conditions as specified under

section 6.1–39 of the Code of Virginia 1950, *et sequi.* Of particular importance to the present controversy is the language of section 6.1–39(c) which reads as follows:

"(c) Notwithstanding the limitations of the foregoing paragraphs, the State Corporation Commission may, when satisfied that public convenience and necessity will thereby be served, authorize the establishment of branch banks in cities *contiguous* to the county or city in which the parent bank is located, and the establishment of branch banks in counties *contiguous* to the city in which the parent bank is located. Establishment of such branches may be by merger, consolidation, purchase of assets or creation of a new branch; but if the parent bank is located in a city such branches in the *contiguous* county may not be established more than five miles outside the city limits." (Emphasis added.)

United Virginia Bank/Seaboard National is a national banking association chartered under the National Bank Act and, as such, this parent bank is located in the City of Norfolk, Virginia. On September 25, 1969, this bank made application to the Comptroller of the Currency for a certificate to establish a new branch bank to be located in Portsmouth, Virginia; the latter city being separated from the City of Norfolk by the Elizabeth River which is approximately one mile in width. Vehicular traffic between Portsmouth and Norfolk is maintained by two tunnels under the river. Apparently, by letter dated May 13, 1970, the Comptroller advised the parent bank that its application was approved. Thereafter, on June 15, 1970, three Portsmouth banks brought an action in this court, same being Civil Action No. 436–70–N, against the parent bank and the Comptroller of the Currency requesting the entry of an order holding, in effect, that (1) the parent bank

was not entitled to establish and operate a branch bank in Portsmouth, (2) the Comptroller be required to withdraw and cancel the certificate of authority for said branch bank,[1] and (3) the parent bank be enjoined and restrained from establishing and operating said proposed branch bank. In due time, after the parent bank had answered, the Commonwealth of Virginia ex rel. State Corporation Commission was granted leave to intervene as a party defendant. No injunctive hearing ever having been requested in this case, the first conference in connection with same was on October 12, 1970, when this case was then consolidated with Civil Action No. 472–70–N hereinafter mentioned. The Comptroller has filed a motion for summary judgment and, on October 12, 1970, a hearing on the motion was scheduled for December 23, 1970, with appropriate provision for the filing of briefs.

On or about March 23, 1970, the Virginia National Bank, a national banking association, whose main office is in Norfolk, Virginia, filed an application with the Comptroller of the Currency under the National Bank Act to establish and operate a branch bank in the City of Hampton, Virginia. Norfolk and Hampton are separated by a body of water approximately six miles in width where the mouth of the Elizabeth River and the mouth of the James River come together and form a large body of water before reaching the Chesapeake Bay and the Atlantic Ocean. Vehicular traffic between Norfolk and Hampton is now accomplished by a combined bridge-tunnel connecting the two cities. Prior to the erection of the bridge-tunnel, ferry boats were used to accommodate vehicular and passenger travel. Incidentally, between Portsmouth and Norfolk ferry boats ran regular schedules prior to the construction of the first tunnel in 1952. As to the application filed by the Virginia National Bank, the Comptroller

---

1. Apparently the certificate of authority had not actually been issued and delivered to the parent bank at the time the action was filed, but it is believed that it was subsequently accomplished at the request of the parent bank.

promptly notified the Commissioner of Banking in Virginia and, by letter dated March 26, 1970, the Regional Administrator of National Banks was advised by the Commissioner of Banking with respect to the application as follows:

"I have discussed this proposal with Judge Catterall of the Commission [State Corporation Commission]. It has been concluded that the cities of Norfolk and Hampton, Virginia, are not contiguous within the meaning of § 6.1–39(c) of the Code of Virginia.

"Accordingly, if a State bank with its parent office located in the City of Norfolk should apply for a branch in the City of Hampton, we would have to deny the application."

Extensive briefs were filed by the parties before the Comptroller. Despite the views of the Commissioner of Banking and the Honorable Ralph T. Catterall, a commissioner of the Virginia State Corporation Commission, the Comptroller issued the certificate of authority for Virginia National Bank to open a branch in Hampton on July 1, 1970, and the branch was immediately placed in operation.

On July 6, 1970, an action was filed in this court, same being Civil Action No. 472–70–N. The named plaintiff is "Commonwealth of Virginia ex rel. State Corporation Commission." The complaint is verified under the oath of Ralph T. Catterall, a Commissioner, Virginia State Corporation Commission, same being dated July 3, 1970. The defendants are the Comptroller of the Currency and Virginia National Bank. In essence, the State Corporation Commission has invoked the jurisdiction of the federal court seeking an injunction and the cancellation of the certificate of authority issued by the Comptroller on July 1, 1970. District Judge MacKenzie denied a preliminary injunction on July 9, 1970, but scheduled a hearing on the merits for July 18, 1970. Thereafter, at the request of counsel for the State Corporation Commission, the matter was continued generally. Motions for summary judgment were filed and the matter was scheduled for hearing on December 23, 1970, pursuant to the joint hearing conducted on October 12, 1970.

The State Corporation Commission agrees with the Comptroller in the finding that Norfolk and Portsmouth are contiguous cities, but it disagrees in the conclusion of the Comptroller that Norfolk and Hampton are contiguous. As noted, the Comptroller has determined that the proper interpretation of the word "contiguous" is applied in the geographical sense and, therefore, Norfolk and Hampton are just as "contiguous" as Norfolk and Portsmouth.

At the present stage of these proceedings, we do not know whether the lines of the respective cities meet and, if so, where. We know, of course, that, assuming arguendo they meet, the meeting line is underwater in each case.

In argument, counsel for the State Corporation Commission insists that the intent of the General Assembly and the administrative interpretations of section 6.1–39(c) are such that the word "contiguous" means "economically contiguous." It is under this theory that the State Corporation Commission agrees that Norfolk and Portsmouth are "contiguous."

The question presented in the two actions brought against the Comptroller of the Currency and the respective parent banks is one of great interest and will be considered at length at the hearing on the motions for summary judgment or, if the motions do not resolve the question, then at the time of the hearing on the merits.

The State Corporation Commission is an active party litigant in each case. Its pertinent opinions, if any, are entitled to weight. The views of the individual Commissioners, if not already expressed, may be given in the form of affidavits or depositions. The State Corporation Commission is undeniably a court, but when it files an action in another court it becomes a party litigant and it sheds its judicial robe. The indi-

vidual Commissioners are at liberty to testify, and be subjected to cross-examination, in any hearing on the merits.

This brings us to the existing controversy. On November 9, 1970, after all parties, including counsel for the State Corporation Commission, had agreed to the date for the hearing on the motions for summary judgment on December 23, 1970, which likewise required the filing of interim briefs, the State Corporation Commission, acting *ex parte*, entered an "Order For Administrative Hearing" scheduled for December 11, 1970. Omitting the names of various parties to whom certified copies of the order were sent, the order reads:

"It APPEARING that a controversy exists between the Commissioner of Banking and the Comptroller of the Currency as to the meaning of the word 'contiguous' in § 6.1–39 of the Code of Virginia (1950) as amended, and

"That the Commissioner of Banking by Administrative Order entered July 6, 1970 by this Commission is ordered to continue his administrative practice of refusing to process applications of banks located on one side of Hampton Roads for branches on the other side, and

"That since July 1, 1970 a branch of a national bank with its home office in Norfolk has a branch open in Hampton, Virginia, approved by the Comptroller of the Currency with knowledge of the Commissioner of Banking's administrative practice, and

"That the parity of the dual banking system is being adversely affected; a national bank operating a branch where a state bank is prohibited to branch, and

"That the controversy as to the meaning of the word 'contiguous' in § 6.1–39 of the Code of Virginia concerns all banks doing business in Virginia, and that the public interest requires that the controversy be authoritatively settled, it is

"ORDERED

"That a hearing on said controversy be held at 10:00 A.M. on December 11, 1970, in the Commission's Courtroom in Richmond, for the purpose, under Rules 4 and 5 of the Commission's Rules of Practice and Procedure, of reviewing the July 6, 1970 Administrative Order of the Commission for error of fact or law. All interested parties may intervene and present such evidence and argument as deemed relevant."

The Administrative Order of July 6, 1970—entered on the same date the State Corporation Commission filed Civil Action No. 472–70–N—is very brief. It is signed by the three Commissioners who will conduct the proposed hearing on December 11, 1970. It mentions nothing concerning "economically contiguous," but merely states that cities on the opposite sides of Hampton Roads are not contiguous.

Upon receipt of the "Order For Administrative Hearing," dated November 9, 1970, Virginia National Bank filed the present action, same being Civil Action No. 794–70–N. The complaint incorrectly refers to 12 U.S.C.A. § 1651(a) as the jurisdictional basis. It was conceded that this should have read 28 U.S. C. section 1651(a), the All Writs Statute, and we treat the complaint as accordingly amended. On November 30, 1970, the Court heard the request for a preliminary injunction and, after lengthy argument, took the matter under advisement.

In the colloquy between the Court and counsel for the State Corporation Commission, inquiry was made as to whether there were any controversies of a similar nature which prompted the scheduled hearing on December 11, 1970, the reply being in the negative. The Court then inquired as to what prompted the action by the quasi-judicial body who is a plaintiff in Civil Action No. 472–70–N. The reply is rather revealing:

"MR. TROY: All right. Your Honor, this, of course, comes from the

proceeding in controversy that now exists. The State Corporation Commission feels very strongly that they are to regulate state banks; that the federal law says that state banks—when and where state banks may branch—controls when and where national banks may branch, and they feel as though the Comptroller has slapped them in the face, especially in the manner that this [branch bank] was opened in the middle of night, practically, without an opportunity and to thwart this court's injunctive powers.

"THE COURT: Well now, right there then, do I understand that it emanated solely from one or more of the State Corporation Commissioners?

"MR. TROY: Yes, sir.

"THE COURT: All right.

"MR. TROY: Absolutely.

"THE COURT: All right. Now, why in the world did he invoke the jurisdiction of this court in the first instance?

The precedent for a party litigant's right to decide his own case is, to say the least, rather unique. We are told that the hearing of December 11, 1970, is to "aid the court" in determining Civil Action No. 472–70–N. At the same time it is strongly suggested that the individual members of the State Corporation Commission are so agitated by the action of the Comptroller of the Currency that no proper hearing could be conducted. The State Corporation Commission was perfectly within its rights in bringing the action contesting the ruling made by the Comptroller. In filing that suit, it asserted the rights of the Commonwealth of Virginia as an administrative agency. In ordering the so-called Administrative Hearing scheduled for December 11, 1970, it is acting in a quasi-judicial capacity in that it will hear evidence, perhaps write an opinion, and enter an order thereon. While we hesitate to speculate as to the outcome and final result of the hearing scheduled for December 11, 1970, it is difficult to believe that the quasi-judicial body, comprised of the same group, would go contrary to the wishes of the purely administrative agency which is the plaintiff in Civil Action No. 472–70–N.

We need not reach the point of determining whether the previously announced position of the State Corporation Commission is binding upon the federal court in Civil Action No. 472–70–N. The Attorney General contends that it is binding. The Comptroller and the Virginia National Bank argue to the contrary, although they do not insist that the position of the State Corporation Commission should be wholly disregarded. The record abundantly establishes the views of Commissioner Catterall and, if the Attorney General is correct, nothing more is needed. Apparently, however, the State Corporation Commission feels that its position needs strengthening. If so, we would prefer that the strength come from a disinterested body and not from a party litigant.

It is quite understandable that no precedent case precisely in point is available. It is equally true that the Virginia National Bank is entitled to some type of relief by reason of the action of the State Corporation Commission.

The General Assembly of Virginia meets in Special Session during the early part of January 1971. Since the General Assembly enacted what is now § 6.-1–39(c) of the Code of Virginia 1950, as amended, if it is the wish of the legislative body to amend the statute in line with the theory advanced by the State Corporation Commission, it is presumed that such could be accomplished in 1971. The purpose of the hearing on December 11, 1970, may, indeed, be to obtain the views of banking interests and others as to the interpretation of the word "contiguous" *in futuro*. If so, there is clearly a legitimate purpose and no effort should be made to thwart same. As Commissioner Catterall said in his article on The State Corporation Commis-

sion of Virginia, 48 Va.L.Rev., pp. 139–151, the Commission exercises judicial, legislative, administrative and ministerial functions, and it is "often hard to distinguish between a judicial case and one that is legislative, administrative or ministerial." Judge Catterall states that a decision "whether a bank should be allowed to open is administrative." However, from what we have been advised, the hearing scheduled for December 11, 1970, has nothing to do with any *pending* bank application. We are forced to the conclusion that the purpose of the scheduled hearing is legislative in nature to be coupled with a quasi-judicial decision.

■ In Prentis v. Atlantic Coast Line, 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908), involving intrastate rates of railroads, the Supreme Court declined to enjoin the State Corporation Commission of Virginia under the principle of "comity", holding that the railroads should have exercised their absolute right of appeal to the Supreme Court of Appeals of Virginia before turning to the federal court for relief, but retaining the cases on the docket pending such appeal. What is important, however, is that *Prentis* stands for the principle that proceedings legislative in nature are not proceedings in a court within the meaning of the statute prohibiting a federal court from issuing an injunction against a state court. As Justice Holmes said: "That question depends not upon the character of the body, but upon the character of the proceedings." We entertain no doubt as to the power and authority to issue the requested injunction but, in the interest of state-federal relations, we feel that an alternative adequate remedy may be fashioned.

Very much the same problem was before the court in City of Fresno v. Edmonston, 131 F.Supp. 421 (S.D.Cal., 1955), the only material distinction being that administrative bodies (not courts) were there enjoined. After some 7 years of litigation in the federal court the Division of Water Resource of the State of California commenced hearings on applications for the appropriation of water, which applications had been pending for many years. All applicants, except one, were parties to the federal action then pending. The State of California had voluntarily intervened. The district judge thus posed the question as being "a case where *the waters have been impounded under claim of right, in which the State concurs, and a determination after the fact is sought to be imposed on parties who have instituted judicial proceedings for a determination as to their rights*," and further said: "The administrative proceeding here can no longer be merely preliminary for it seeks to operate upon an accomplished fact."

It is argued that there is no *res* involved in this case and, therefore, there is no authority to issue any injunction in aid of the federal court jurisdiction. Aside from the fact that the State Corporation Commission is wearing at least two hats and is a party who invoked the jurisdiction of the federal court, we do not concede that no *res* is involved. It seems clear that the *res* is the branch bank already established and in operation in Hampton, Virginia. The branch bank is as much the *res* as the waters which were impounded under a claim of right in City of Fresno v. Edmonston, supra. We need not review such authorities as Toucey v. New York Life Insurance Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941), Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922), and Hayes Industries, Inc. v. Caribbean Sales Associates, Inc., 387 F.2d 498 (1 Cir., 1968). Moreover, it is apparent that there are recognized exceptions to the *res* rule, Brown v. Pacific Mut. Life Ins. Co., 62 F.2d 711, 713 (4 Cir., 1933), an opinion by the late Chief Judge John J. Parker. And, of course, where the "court," empowered to act as an administrative agency, seeks to invoke the jurisdiction of the federal court in its capacity as an administrative agency, the "character of the proceedings" is the controlling factor. Prentis v. Atlantic Coast Line, su-

**266**

pra; Mississippi R. Commission v. Illinois C. R. Co., 203 U.S. 335, 27 S.Ct. 90, 51 L.Ed.2d 209 (1906).

Not before the court at this time is the effect of any hearing before the State Corporation Commission upon the pending action in the federal court. The State Corporation Commission argues that state banks should be granted parity with national banks in determining where branches should be located. Assuredly the federal court cannot argue with this contention if that is appropriate in the wisdom of the bodies having legislative authority, and we assume arguendo that the State Corporation Commission has such legislative authority. Nevertheless, to permit a party litigant to make a ruling which may materially affect the outcome of the case in which the party litigant is involved, in the absence of a statute permitting a remand for further hearing, is unthinkable.

 The Court has concluded to enter an order enjoining the defendants herein from presenting in evidence, either in connection with the pending motions for summary judgment, any other motion or preliminary proceeding, or at the trial on the merits, in connection with Civil Action No. 4–2–70–N or any consolidated action, any transcript or portion thereof, in the absence of agreement of the parties, of any hearing scheduled for December 11, 1970, or any continuance thereof, touching the interpretation of § 6.1–39(c) of the Code of Virginia, but this shall not preclude the introduction in evidence of any proceedings, correspondence or other evidence which arose on July 6, 1970, or any date prior thereto, nor shall it preclude the presentation of affidavits or independent evidence unrelated to the hearing scheduled for December 11, 1970, if said affidavits or independent evidence make no reference to the hearing of December 11, 1970, or any continuance thereof. The Court will further enjoin the defendants herein from presenting, by way of affidavits, evidence or statement, any order or opinion which may hereafter be issued

or filed by the State Corporation Commission pursuant to the hearing scheduled for December 11, 1970, or any continuance thereof, unless the parties agree upon such introduction in evidence.

In order to protect the rights of the defendants herein, the transcript, order and/or opinion, or copies thereof, relating to the hearing scheduled for December 11, 1970, or any continuance thereof, may be sealed and presented to the court in connection with Civil Action No. 472–70–N, and/or the consolidated action, without comment by counsel for defendants, in the absence of agreement, as to the contents thereof. Should any appellate court see fit to examine same, it is at liberty to do so.

The defendants may be advised to appeal from the order to be entered herein and, if so, the district court would then have the benefit of any appellate ruling.