333 F.Supp. 847 (1971)
COMMONWEALTH OF VIRGINIA ex rel. STATE CORPORATION COMMISSION, Plaintiff,
v.
William B. CAMP, Comptroller of the Currency of the United States
and
Virginia National Bank, Defendants.
Civ. A. No. 472-70-N.
United States District Court, E. D. Virginia, Norfolk Division.
October 28, 1971.
Andrew P. Miller, Atty. Gen., of Virginia, Anthony F. Troy, Asst. Atty. Gen., A. Grey Staples, Jr., Richmond, Va., Jordan, Morris & Hoke, Raleigh, N. C., for plaintiff.
John E. Shockey, Jr., Office of Comptroller of Currency, Washington, D. C., for William B. Camp.
Kaufman, Oberndorfer & Spainhour, Norfolk, Va., for Virginia National Bank.

OPINION
WALTER E. HOFFMAN, Chief Judge.
Much of the factual history of this case is contained within the memorandum *848 opinion in a related case, Virginia National Bank v. Commonwealth of Virginia ex rel. State Corporation Commission et al., D.C., 320 F.Supp. 260, decided December 8, 1970.[1] For convenient reference, the prior opinion of this Court is incorporated as a part and parcel of this opinion.
Since December 8, 1970, the Court has heard all of the evidence on the cross-motions for summary judgment,[2] and the matter has been extensively briefed and argued. The Court withheld its decision pending the outcome of the appeal to the United States Court of Appeals for the Fourth Circuit in Virginia National Bank v. Commonwealth of Virginia ex rel. State Corporation Commission et al.
We thus approach the pertinent issue in this case which may be succinctly stated as follows:
Is the word "contiguous" as used in section 6.1-39(c) of the Code of Virginia 1950, as amended, applied in the "geographical sense" as contended by the Comptroller and the Virginia National Bank, or is it applied in the "economic sense" as urged by the State Corporation Commission?
An ancillary question is whether, armed with the facts at hand, the *849 Comptroller's findings and conclusions were substantially and rationally supported, and were neither unfair, arbitrary, nor capricious. As indicated by First-Citizens Bank and Trust Company v. Camp, 409 F.2d 1086, 1095 (4 Cir., 1969), not every error on the part of the Comptroller calls for a reversal.
The Virginia National Bank has its parent office in the City of Norfolk. Thus, according to section 6.1-39(c), it is permitted to establish branch banks "in cities contiguous to the county or city in which the parent bank is located."[3]
The history of the development of the cities of Norfolk and Hampton is set forth in a stipulation filed herein.[4] Suffice it to say that, at all pertinent times, the boundary lines of the two cities met, although said boundary line was under water. They have a common corporate and political boundary of more than two miles in length. The western terminus of the Hampton boundary line commences at the northernmost point of the Port Warden's line adjacent to Sewells Point off the Naval Operating Base in Norfolk, with said boundary line then running in a generally easterly direction adjacent to the northern shoreline of the City of Norfolk in the waters of Hampton Roads for a distance of more than two miles. The nearest distance from shore to shore is approximately 2¼ miles. The shorelines of the two cities are connected by a two-lane vehicular bridge-tunnel about three miles in length; the driving speed requiring approximately six minutes from the police guardhouse on the Norfolk side to the toll booth on the Hampton side. Construction of a second bridge-tunnel parallel to the existing one is now in process. The City of Hampton exercises jurisdiction over traffic and other violations occurring on the bridge-tunnel within the boundaries of that city which, as noted, run to the low water mark or Port Warden's line in the waters of Hampton Roads.
The Comptroller granted the certificate of authority for the Virginia National Bank, a national banking association, to establish and operate a branch in the City of Hampton pursuant to 12 U.S.C. section 36(c), which reads in part as follows:
"(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: * * * (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks * * *" (Emphasis added.)
We are thus required to look to the statute law of Virginia which brings us to the use of the word "contiguous" as set forth in section 6.1-39(c) of the Code of Virginia 1950, as amended.[5]
*850 There can be no doubt but that the General Assembly of Virginia could, if it so elected to do so, amend section 6.1-39(c) by using the term "economically contiguous" or something similar thereto. We fear that the State Corporation Commission is assuming the function of the legislative branch of Virginia's government, and this it should not do although, quite candidly, certain courts are inclined to rewrite statutes from time to time. We conclude that the Comptroller of the Currency correctly construed the pertinent Virginia statute as it existed on July 1, 1970, and, even if incorrect in this conclusion, the Comptroller was not obliged to accept the version advanced by a single member of the State Corporation Commission, the Honorable Ralph T. Catterall. The action of the Comptroller was neither unfair, arbitrary, nor capricious, and his findings and conclusions were substantially and rationally supported.
Authorities are legion in construing the word "contiguous." Dictionary definitions generally refer to terms such as "touching," "adjacent," "nearby," "close," "continuous," "in close proximity," "near though not in contact," and many other expressions. Clearly the dictionary definition is geographic. More than one hundred decided cases refer to the word "contiguous" and not once has the word been given an "economic" interpretation.
In First Federal Savings & Loan Association of Nashua v. State Board of Trust, 109 N.H. 467, 254 A.2d 835 (1969), the Supreme Court of New Hampshire had occasion to construe the word "contiguity" which was defined by the statute as boundary touching as used in banking circles. It was urged that where two towns were separated by water and not accessibletherefore clearly not economically relatedthe towns were not contiguous. Nevertheless, the New Hampshire court held otherwise. This case would be directly in point but for the fact that the New Hampshire statute expressly defined "contiguity" in terms of boundary touching, whereas Virginia did not see fit to be so precise in defining "contiguous."[6]
Some of the authorities hold that "contiguous" means "adjacent to" or "touching." Others recognize the issue of "nearness." True, there are rare instances in which the word must be given a different meaning, such as that exemplified in United States v. Hunter, 80 F.2d 968 (5 Cir., 1936), where the words "contiguous countries" as used in section 459 of the Tariff Act of 1930, 19 U.S.C., section 1459, were held to be inapplicable as between the British West Indies and the United States. Since Hunter is strongly urged by the plaintiff herein, we quote in part from the opinion where it is said:
"All lands separated by water touch one another in a sense beneath the water, but when the intervening water is the high seas over which neither of them has exclusive jurisdiction they are not contiguous countries though no dry land intervenes." (Emphasis added.)
In the present case we are not confronted by high seas; the City of Hampton owns the underwater land to the point where the City of Norfolk begins at the low water line; the City of Hampton exercises jurisdiction over the area to the same point where Norfolk takes over. In all respects the true meaning of the word "contiguous" has been geographic and, as indicated above, *851 this is the first attempt to inject the word "economically" as a part of the word "contiguous." We conclude, for reasons herein stated, that the word "contiguous" was used by the General Assembly of Virginia in a geographic sense, and that the word means "adjacent to or nearby."
In a related case which is no longer pending, Civil Action No. 436-70-N, the Comptroller granted a certificate to United Virginia Bank/Seaboard National, located in Norfolk, to operate a branch bank in Portsmouth. This action was taken with the approval of Commissioner Catterall who advised the Comptroller that Norfolk and Portsmouth are "contiguous." These two cities are separated by the Elizabeth River which is approximately one mile in width. Two tunnels under the river permit the passage of vehicular traffic. The two cities are not "adjacent" to one another as the bed of the river is owned by the city of Chesapeake. Admittedly they are "nearby." Thus, in the Portsmouth bank case, it was permissible with Commissioner Catterall to jump over the bed of the river owned by another city. That the General Assembly of Virginia was aware of the many rivers separating cities and counties in Virginia is a foregone conclusion. They are, indeed, natural geographic boundaries for cities and counties throughout Virginia.
The position in which the Comptroller is placed in interpreting plain and unambiguous words of a state statute is indeed difficult. With no legislative history on which to rely, and no formal action of a judicial or quasi-judicial body on which to base his judgment, should the Comptroller disregard his duty and accept, without question, the statement of an individual Commissioner who has seen fit to place his own interpretation on a word which is readily definable? We think not. As stated by Judge Winter in First-Citizens Bank and Trust Company v. Camp, 409 F.2d 1086, 1095 (4 Cir., 1969):
"As we have shown, we do not think that the Comptroller unreasonably or impermissibly construed the North Carolina statute by which his action was bound."
The Camp case dealt with North Carolina's "need and convenience" and "solvency of the bank" criteria. The Comptroller must be given some discretion in the interpretation of words of a state statute which have not been previously defined as, otherwise, he would have no function to perform. It is not in every case that a reversal must follow merely because the Comptroller may have erred.
The General Assembly of Virginia does not follow the practice of compiling legislative history on statutes ultimately enacted. We are without the benefit of legislative reasoning in aid of the word "contiguous." Presumably, if the General Assembly had seen fit to adopt an economic standard, it would have so stated. In the 1933, 1942 and 1948 Acts of Assembly relating to bank expansion by merger in "adjoining counties," the definition was "to mean counties each of which shall adjoin the county in which the parent bank is located." Nothing could be clearer as to a geographical connotation.
In 1962, the General Assembly amended the Banking Act. The primary purpose and design was to create larger banks with greater lending limits to attract industry. Obviously this was to correct the evils of the 1948 legislation which placed strict limitations on branch banking because of the expansion of the old Morris Plan Banks.[7] In none of the discussions by reputable authorities has there been any intimation that the General Assembly considered the word "contiguous" *852 in any sense other than geographic.
We attach no significance to the statute changes as an aid to the plaintiff. Prior to 1948, section 4149(14) of the Code of Virginia permitted branch banking through the opening of de novo branches or through mergers or acquisition. Mergers were allowed only in the same or adjoining counties, or with banks located within 25 miles of the parent bank. In the discretion of the State Corporation Commission banks having paid-up and unimpaired capital and surplus of $50,000 or over could establish branches within the limits of the city, town, or village in which the parent bank was located. § 4149(14) (a). Under § 4149(14) (b), the State Corporation Commission, again in its sole discretion, could authorize banks located in any city to establish branches within other cities having a population of not less than 50,000 inhabitants. In referring to the term "adjoining counties," where not more than two were involved, the General Assembly stated that this term "shall be construed to mean counties each of which shall adjoin the county in which the parent bank is located."
The provision with respect to "free branching" between cities with a population of not less than 50,000 inhabitants brought about the Morris Plan expansion program and, no doubt, had its political implications touching certain members of the General Assembly. In 1948, section 4149(14) was drastically amended. The words "in the discretion of the Commission" were deleted and, in lieu thereof, the Commission was authorized to establish branches only "within the limits of the city, town or village in which the parent bank is located," and then only when the Commission was "satisfied that public convenience and necessity will thereby be served." Mergers and sales of banks were again limited to a distance of 25 miles from the parent bank. The 1948 amendment again defined the term "adjoining counties" as it existed prior to the amendment.
The 1948 amendment effectively stopped bank expansion. The banking circles and the public at large quickly came to the realization that industry needed adequate banking facilities with substantial lending capacity. Moreover, there was a call to give banks a choice between affiliation with a holding company and a unit bank. Finally, in 1962, the statute in controversy, § 6.1-39, was enacted containing the word "contiguous."
We recognize the wisdom of adopting the word "contiguous" as it is obvious that Norfolk and Portsmouth are geographically "contiguous" even though they are not "adjoining" in the strict sense of the word. We fail, however, to follow the logic of the plaintiff in urging that the statute intended to confine de novo branching in an already-existing service area from an economic standpoint.
The only Virginia authority remotely touching the issue of contiguity is Holston Salt & Plaster Co. v. Campbell, 89 Va. 396, 398, 16 S.E. 274 (1892), where the Supreme Court of Appeals of Virginia adopted the primary boundary line definition.
It is argued that the Virginia National Bank is estopped from now claiming that Hampton and Norfolk are "contiguous" by reason of the actions of its counsel involving an attempted merger of the same bank with a Newport News bank. While Hampton and Newport News adjoin, we do not know from this record whether the boundary line of Newport News actually meets with Norfolk. In 1968, the Comptroller approved an application by Virginia National Bank to merge with a Newport News bank, over the opposition of the Attorney General. An anti-trust action was then instituted which resulted in a withdrawal of the application. In the Comptroller's decision, dated December 27, 1968, it was stated, without giving any reason, that Virginia National Bank "is prohibited by State law from branching de novo in that city [Newport News]." Presumably, this conclusion *853 was reached by reliance upon a letter from counsel for Virginia National Bank, dated August 26, 1968, wherein counsel stated:
"Based on a careful investigation of the relevant authorities, and on all pertinent facts and circumstances which we are familiar, we are of the opinion that the City of Newport News is not `contiguous' to the City of Norfolk and, accordingly, Virginia National Bank cannot lawfully establish a branch office in Newport News."
Whatever may be the differences between Hampton and Newport News, as the same relate to Norfolk, it is apparent that the Comptroller did not give the same mature consideration to the use of the word "contiguous" in the Newport News matter as he did when called upon to meet the issue in the Hampton case. In Newport News, the Comptroller's principal question was the effect upon competition. In Hampton, the issue revolved around the interpretation of the state statute. Even if we were to assume that the Comptroller erred in holding that Norfolk was not "contiguous" to Newport Newsa fact which we do not find in this casethis does not preclude him from correcting his prior ruling. Courts have been known to change their minds and reverse themselves. We know of no ruling which prohibits the Comptroller from doing likewise,[8] We hold that neither the Comptroller nor the Virginia National Bank is estopped from now urging that Hampton and Norfolk are "contiguous" within the meaning of § 6.1-39(c) of the Code of Virginia.
Prior to 1965three years after the enactment of § 6.1-39(c)a form was in use by the State Corporation Commission which required detailed geographic factors before permitting a bank to branch. Indeed, a revised form was put into effect in June 1962 which called for this geographic information, and this was approximately the same time as the amendment to § 6.1-39(c) became effective; the Virginia law providing that a statute shall be effective after 90 days from the adjournment of the General Assembly.[9] Between June 29, 1962, and December 31, 1965, the State Corporation Commission approved 28 cases involving branching across political boundaries,[10] all predicated upon the information contained in the form put in use in June 1962 and requiring geographic information.
For reasons not disclosed by the record, the branch banking form was revised in 1965, but the new form, although substantially eliminating geographic factors, did not require economic evidence of contiguity. Nor does it appear that the Commission has ever taken or requested economic data on the *854 issue of contiguity since 1965, except perhaps by reason of the Commission's hearing on December 11, 1970, conducted five (5) months after this litigation had been instituted, concerning which this court, by reason of its prior opinion, has not considered.
The Commissioner of Banking, Thomas David Jones, Jr., and the present First Deputy Commissioner of Banking of the State Corporation Commission, Ralph S. Jessee, have both testified on the summary judgment hearing. It is rather obvious that they owe their allegiance and their positions[11]to Commissioner Catterall who, by reason of assignment of duties, has direct supervision of the Bureau of Banking. Commissioner Jones stated, in direct examination, that the word "contiguous" had been defined by the State Corporation Commission to mean "one economic community composed of two political communities" but, on cross-examination, he conceded that he was relying upon conversations with Commissioner Catterall, no formal hearings were ever held, and only in a letter to attorney Lemuel Cleaves Manning written in 1968 did Commissioner Catterall first express his economic theory. Even in that letter, Commissioner Catterall first express his inconsistent as he stated that the word "contiguous" was "used to keep banks in one city or county from hopping over other counties and cities," clearly carrying a geographic connotation.
Deputy Commissioner Jessee has always applied a geographic definition as to branch banking. He testified that Chesterfield County was "contiguous" to the City of Richmond because the city and county "adjoin." The same was true as to Newport News and Hampton.
Above all, in considering the 64 applications processed and approved between June 29, 1962, and December 31, 1970, there is not the slightest bit of economic evidence in the files of the Commission which pertain to contiguity. Branch after branch was authorized without regard to whether the areas constituted "one economic community." No studies or reports on this phase of the application were ever requested.
Professor Charles Schotta, an associate professor of economics at Virginia Polytechnic Institute and State University at Blacksburg, was permitted to testify over objection of the defendants. While the admission of his testimony is extremely dubious, we would prefer to consider same rather than sustain the objection thereto. Professor Schotta gives his definition of the word "contiguous" as follows:
"My opinion, simply stated, is that, after considering all of this evidence from my standpoint, the statute and the word `contiguity' and the geographical implications surrounding the whole thing show me or tell me that `contiguity' in this bank market delineation context refers to an attempt to limit and delimit the economic community in which the main office of the bank finds itself imbedded."
In giving this definition Professor Schotta does not look to the statute law; he premises his conclusions on why a bank would want to branch and the economic reasons underlying the request; he speaks of the service area but concedes that there have been changes since 1962; he disregards political boundaries. However, on cross-examination when questioned whether Richmond and Norfolk, if found to be in the same economic community, could branch, he would place the burden upon the State Corporation Commission to interpret the meaning of the word "contiguous," even though he would find that there was one bank market. He interlocks, however, the "convenience and necessity" issue in considering the function of the State Corporation Commission as applied to its dominion over state banks as contrasted *855 with the duties of the Comptroller in applying the statute law of Virginia, an issue which was not raised before the Comptroller. Indeed, Professor Schotta strongly intimates that Commissioner Catterall's latest definition is "confusing." We agree.
Clearly we think that Professor Schotta is merely implying that, without regard to the statute, his definition of "contiguous" as being "one economic community and one banking market" is what would be for the best interests of banking in Virginia. Like Commissioner Catterall, he has assumed the role of a state legislator. How, under such circumstances, can the Comptroller ever conscientiously perform his duty under the federal law?
Counsel have agreed that all evidence on the interpretation of the word "contiguous" is now before the court. Accepting as we must the rule that primary and ordinary definitions of words are to be adopted, unless their context and conditions in which they are used appear to make some more meticulous construction necessary, we conclude that the word "contiguous" as used in § 6.1-39(c) of the Code of Virginia 1950, as amended, means "adjacent to or nearby." Moreover, we feel that the General Assembly of Virginia, in amending the statute in 1962, attached a geographic meaning to the word "contiguous" and gave little or no consideration to the economic factors other than determining "that public convenience and necessity will thereby be served" as to state banks. The federal statute, 12 U.S.C. § 36(c), binds the Comptroller to the statute law of a state as to the location of any branch of a national bank. The Comptroller, in the present case, did not erroneously construe the statute law of Virginia and his interpretation thereof was not, in any sense, without substantial support and could not, in any degree, be characterized as unfair, arbitrary or capricious.
The motion for summary judgment as filed by the plaintiff will be denied. The motion for summary judgment as filed by the Virginia National Bank will be sustained. The motion for summary judgment filed by the Comptroller of the Currency will be sustained for the reasons stated herein, but not upon the ground that the court was limited to reviewing the files which were before the Comptroller.
The effectiveness of this ruling for the purpose of appeal shall be as of the date that an order is presented and entered. Counsel for the Virginia National Bank shall prepare said order, and either arrange for the endorsement thereof by opposing counsel or otherwise give notice of intention to present same at an appropriate time.
NOTES
[1] Commonwealth of Virginia ex rel. State Corporation Commission, and two of the three defendant Commissioners, took an appeal from the court's order entered on December 8, 1970. The United States Court of Appeals for the Fourth Circuit dismissed the appeal, holding that the order of December 8, 1970, was not appealable. See: 448 F.2d 425, decided September 27, 1971.
[2] It should be noted that, as revealed by the prior opinion, the State Corporation Commission was to conduct a hearing on December 11, 1970, touching the precise question presented in the case now before the court. By its order of December 8, 1970, this Court declined to enjoin the hearing, but held that any evidence, exhibits and rulings of the State Corporation Commission could not be considered by the federal court as an outgrowth of the State Corporation Commission hearing of December 11, 1970. While the details of the Corporation Commission hearing are not before the Court, it is apparent that the Commonwealth of Virginia prevailed in that proceeding as the Assistant Attorney General of Virginia forwarded to the clerk of this court a copy of his motion, in behalf of the appellee in that case, to expedite the appeal, making reference to the pendency of this case in the federal court. The motion of the Commonwealth of Virginia to expedite the appeal in First National Bank of Tidewater v. Commonwealth of Virginia (Record No. 7723) and Virginia National Bank v. Commonwealth of Virginia (Record No. 7724) was approved by the Supreme Court of Appeals of Virginia by letter dated September 16, 1971, the filing of briefs was duly scheduled, and the cases were fixed for oral argument at the November 1971 session.

Ordinarily, the federal court would abstain pending the ruling of the Supreme Court of Appeals of Virginia. However, the unusual circumstances presented, all as related in the court's opinion in Virginia National Bank v. Commonwealth of Virginia ex rel. State Corporation Commission et al., furnish compelling reasons why the federal court should now render its opinion. Unlike a declaratory judgment action in the state court, the proceedings before the State Corporation Commission which now give rise to the two cases presently before the Supreme Court of Appeals of Virginia, were initiated by the State Corporation Commission, the plaintiff in the federal court action. Moreover, the Comptroller of the Currency is apparently not a party to the state proceedings and is entitled to a decision from the federal court. Furthermore, in the federal court action we are concerned with the state of the law as it existed on July 1, 1970, when the certificate of authority was issued to the Virginia National Bank permitting the establishment of a branch bank in the City of Hampton. Additionally, the General Assembly of Virginia is scheduled to meet in January 1972, and if the legislative body sees fit to amend the statute, it may be done promptly, thus removing the argument of the State Corporation Commission that parity between dual banking systems of state and national banks must be insured. The General Assembly met in special session in January 1971 after this issue was raised, but no legislative action was then sought for the obvious reason that it might affect the decision herein.
[3] There is a limitation on the right of a parent bank to establish a branch in the contiguous county which is not applicable to this case as Hampton is a city.
[4] While the stipulation was not signed by counsel for the Comptroller, it was stated into the record that the Comptroller had no objection as to the correctness of the factual contents. The position of the Comptroller is that the court is limited to reviewing the files that were before the Comptroller.
[5] Although quoted verbatim in the prior opinion, 320 F.Supp. 260, section 6.1-39 (c) is set forth for convenient reference:

"(c) Notwithstanding the limitations of the foregoing paragraphs, the State Corporation Commission may, when satisfied that public convenience and necessity will thereby be served, authorize the establishment of branch banks in cities contiguous to the county or city in which the parent bank is located, and the establishment of branch banks in counties contiguous to the city in which the parent bank is located. Establishment of such branches may be by merger, consolidation, purchase of assets or creation of a new branch; but if the parent bank is located in a city such branches in the contiguous county may not be established more than five miles outside the city limits." (Emphasis added.)
[6] The Federal Reserve Board has had occasion to apply geographic definitions to the word "contiguous" in a banking context. It defined "contiguous territory" in the geographic sense by its resolution of November 7, 1923, in adopting the "contiguous territory rule." It has interpreted the word "contiguous" as stated in section 8(5) of the Clayton Act, 15 U.S.C., section 19(5), in a geographic sense. 1935 Federal Reserve Bulletin, p. 834.
[7] See: Foster, An Examination of Bank Expansion by Direct Merger and Holding Company Route in Virginia1962 to 1966 (1969); Haymes and Phillips, Banking in Virginia: The 1962 Legislation, 21 Wash. & Lee L.Rev. 48, 49 (1964).
[8] An exhaustive brief was filed with the Comptroller in behalf of the Virginia National Bank by Eugene J. Metzger, a Washington attorney, arguing the interpretation of the word "contiguous." In Chesapeake & O. Ry. Co. v. Hewin, 152 Va. 649, 654, 148 S.E. 794, 795-796, it is said: "Primary and ordinary definitions of words are to be adopted, unless their context and the conditions in which they are used appear to make some more meticulous construction necessary." This was precisely the duty imposed upon the Comptroller. He was required to interpret the statute law, and he was faced with a situation which met every aspect of contiguity. With Commissioner Catterall's conclusion that Norfolk and Portsmouth, separated by water, were "contiguous" even though their land boundaries do not meet, it was logical for him to assume that Norfolk and Hampton were "contiguous" when their land boundaries met.
[9] The Acts of Assembly (1962), p. 1417, contain this note: "Except as otherwise provided therein, all Acts of this session of the General Assembly become effective at the first moment of June 29, 1962." Section 6.1-39(c) was, in 1962, codified as § 6-27.1. Since it did not have an emergency clause, it became effective on June 29, 1962; the same month the form was revised.
[10] Thirty-six (36) additional branches across political boundaries were approved between December 31, 1965, and December 31, 1970.
[11] As Commissioner Jones aptly pointed out, he has 4½ years to go before retirement and, inferentially at least, he intends to follow the directions of his immediate superior.